MARC E. JOHNSON, Judge.
|2Pefendant, Carl Kelly, was indicted by the St. James Parish Grand Jury on a charge of second degree murder in violation of La. R.S. 14:30.1. He proceeded to trial on September 11, 2007. After a two-day trial, a unanimous 12-person jury found defendant guilty as charged. The trial court subsequently sentenced defendant to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
In his sole assignment of error on appeal, defendant claims his trial counsel was ineffective in failing to object to the trial court’s improper jury instruction on retreat as it applies to self-defense, and in failing to request that the court instruct the jury as to the provisions of La. R.S. 14:20(C) and (D). Defendant argues La. R.S. 14:20(D) prohibits the trier of fact from considering the factor of retreat in deciding whether the defendant’s use of deadly force was reasonable. For the reasons that follow, we affirm defendant’s conviction and sentence.

\ .FACTS

On the afternoon of January 7, 2007, Detective Claude Louis, Jr. with the St. James Parish Sheriffs Office responded to a shooting call at the Sugar Hill Trailer Park. Upon his arrival, he noticed the victim, Deandre Alexander,[1] lying on the ground. He provided first aid to the victim and helped EMS personnel put the victim into an ambulance. The coroner subsequently arrived at the scene and pronounced the victim dead at 4:00 p.m. After examining the body in the ambulance, the coroner determined the victim “bled out” due to gunshot wounds to his lung and heart. An autopsy showed the victim was shot two to three times, with two significant entry wounds to the back of his torso. The pathologist testified that either one of these wounds could have been fatal by itself. He found no signs that the bullets were fired at close range and, thus, determined the victim was shot from some distance.
The victim’s mother, Yolanda Muse, testified that she and her family moved to the Sugar Hill Trailer Park in September 2006. On the day her 17-year-old son, Deandre was killed, she and her 16-year-old son, Christopher, were across the street from the family’s trailer talking to a neighbor when she saw defendant pointing a gun at Deandre. She heard Deandre say something inaudible and then heard shots. Ms. Muse yelled at Deandre to go home. He turned and ran toward their trailer, and the shooting, continued until Deandre fell to the ground. Ms. Muse heard five or six shots fired all together.
Christopher explained that he saw Deandre walking down the street with a group of people. He looked away from his brother for a time, and when he turned again, he saw Deandre and defendant facing each other. He then saw defendant 14pull out a gun and shoot Deandre. Christopher testified that Deandre turned *3 and ran 20 to 30 feet, while defendant continued shooting at him.
Fourteen-year-old Ramon Kennard testified he and Deandre were walking together in the trailer park when they passed defendant. Ramon stated defendant bumped into Deandre with his shoulder, and then Deandre punched defendant. Thereafter, defendant pulled out a gun and shot Deandre three times. As Deandre started to run away, defendant shot him two times in the back. Ramon explained Deandre was able to get in front of his family’s trailer before he collapsed. Ramon testified that Deandre did not have a weapon.
According to Michael Carroll, defendant lived with him and his girlfriend for a time while defendant dated Mr. Carroll’s stepdaughter. Mr. Carroll testified that one week before the murder, someone fired a gun at his trailer that resulted in buckshot holes in the bedroom wall. He reported the shooting to the police, but did not know who shot the trailer. He told police he believed someone named Willie or Woody had done it. A few days later, Mr. Carroll heard Deandre tell defendant that he was the person who had shot the trailer, and that he wished he had hit someone. Two days before the murder, Mr. Carroll and defendant walked out of their trailer and saw a “commotion” involving Deandre. Referring to Deandre, defendant told Mr. Carroll that he was going to “whack” him one day.
After interviewing witnesses at the scene, police officers obtained an arrest warrant for defendant. He was arrested at 12:45 a.m. on January 8, 2007, hiding inside a vacant trailer in the trailer park. Defendant subsequently gave a statement after being advised of and waiving his rights. Defendant stated he was walking down Sugar Hill Street when he happened upon Deandre at which time Deandre hit him on his chest. Defendant said he pulled a .25 caliber semi-automatic handgun and fired it at Deandre. Defendant could not recall how many shots he fired while | she and the victim faced each other. Defendant stated he fired more rounds as Deandre tried to get to his trailer, and then Deandre collapsed. Defendant told the detective that Deandre did not have a gun or a knife and he did not try to grab defendant. Defendant stated he ran from the scene and discarded the gun behind some dumpsters in a wooded area. He then hid in the vacant trailer until deputies found him. Defendant informed the detective that two days before the shooting, his girlfriend was involved in an argument with Deandre.
At trial, defendant testified he was walking along the street when he saw Deandre. Defendant stated he was worried because Deandre always picked on him. Deandre approached defendant and asked him if he had cautioned defendant’s girlfriend about “playing with” Deandre. Defendant replied that he had at which time Deandre punched defendant in his collarbone and said he was going to get a gun. Defendant testified he was scared because Deandre had shot at his trailer the previous week and had told defendant he should have killed him. He stated he pulled his own gun because he did not want to take a chance that Deandre would kill him or one of the other people living in his trailer.
Defendant admitted shooting Deandre in the back. Although he told Detective Louis during his statement that the shooting was a reaction to Deandre hitting him, defendant testified he shot Deandre because he believed the victim was going to get a gun. Defendant stated he did not see Deandre with a gun or a knife at any time.
In rebuttal, the State called defendant’s girlfriend, Shandreka Russell. In her *4 statement to Detective Louis on the day of the murder, she stated that prior to the shooting, defendant told her he was going to take care of some business, and that he pulled up his shirt to show her a small, black, semi-automatic handgun. She told Detective Louis that she believed defendant was going to kill someone. At | ñtrial, Ms. Russell recanted these statements. She testified that she spoke with defendant just before the shooting, and that he told her only that he was going down the street.

LAW AND ANALYSIS

Defendant argues he received ineffective assistance of counsel because his trial counsel failed to object to what he claims was an erroneous jury instruction on self-defense.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that 1) his attorney’s performance was deficient, and 2) the deficiency prejudiced him. To demonstrate prejudice under this test, the defendant must show that the outcome of the trial would have been different but for his counsel’s unprofessional conduct. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); State v. Nguyen, 06-969, p. 8 (La.App. 5 Cir. 4/24/07), 958 So.2d 61, 65, writ denied, 07-1161 (La.12/7/07), 969 So.2d 628.
Generally, an ineffective assistance of counsel claim is best addressed in an application for post-conviction relief filed in the trial court where a full evidentiary hearing can be conducted. But, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by an assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Taylor, 04-346, p. 10 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 595. We find the record on appeal is sufficient for us to address the merits of defendant’s claim.
The defense theory at trial was that of self-defense. La. R.S. 14:20, pertaining to self-defense, provides, in pertinent part:
|7A. A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
[[Image here]]
C. A person who is not engaged in unlawful activity and who is in a place where he or she has a right to be shall have no duty to retreat before using deadly force as provided for in this Section, and may stand his or her ground and meet force with force.
D. No finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used deadly force had a reasonable belief that deadly force was reasonable and apparently necessary to prevent a violent or forcible felony involving life or great bodily harm or to prevent the unlawful entry.[2]
In charging the jury, the trial court gave the following instruction:
A homicide is justifiable if committed in self-defense by one who reasonably believes that he is in imminent danger of *5 losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. The danger need not have been real as long as the defendant reasonably believed that he was in actual danger. Some factors that you should consider in determining whether the defendant had a reasonable belief that the killing was necessary are the possibility of avoiding the necessity of taking human life by retreat, the excitement and confusion of the occasion, the possibility of preventing the danger to himself by using force less than killing, and the defendant’s knowledge of the assailant’s dangerous character.
[Emphasis added.]
The trial court properly charged the jury with regard to the provisions of La. R.S. 14:20(A)(1). However, the court erred in including retreat as a factor for the jury to consider, in contravention of La. R.S. 14:20(D). The record does not show that defense counsel objected to the improper jury charge either in discussions with the prosecutor and judge prior to closing arguments or at the time the judge issued |sthe instructions. In failing to object to the jury charge regarding retreat, defense counsel effectively waived the issue for appeal. La.C.Cr.P. art. 801(C).[3]
Since defendant’s primary theory of defense was self-defense, we find trial counsel was deficient in failing to object to the improper charge regarding retreat and in failing to request a special jury charge on the provisions of La. R.S. 14:20(C) and (D). Nonetheless, we do not find defendant was prejudiced by counsel’s error and, thus, the second prong of the Strickland test is not satisfied.
A conviction will not be overturned on the grounds of an erroneous jury charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial. State v. Motton, 395 So.2d 1337, 1348 (La.1981), cert. denied, 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139 (1981). An erroneous instruction is subject to harmless error review, or in the case of an ineffective assistance of counsel claim, an analysis of whether the defendant was prejudiced by the error. See State v. Hongo, 96-2060, pp. 4-6 (La.12/02/97), 706 So.2d 419, 421-22; State v. Morris, 09-0422, pp. 19-20 (La.App. 1 Cir. 9/11/09), 22 So.3d 1002, 1014. The question becomes whether it appears beyond a reasonable doubt that the erroneous instruction did not contribute to the jury’s finding of guilt or whether the error is unimportant in relation to everything else the jury considered, as revealed in the record. State v. Smith, 600 So.2d 1319, 1326 (La.1992). Stated another way, the appropriate standard for determining harmless error is whether the guilty verdict was surely unattributable to the jury charge error. Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993).
[9We find the present case very similar to State v. Morris, supra, wherein the First Circuit addressed an ineffective assistance of counsel claim under facts similar to those in the instant case. The defendant in Morris was convicted of second degree murder. The series of events culminating in the murder began two or three *6 days earlier. The defendant and the victim lived in the same neighborhood. The defendant’s mother and the victim’s cousin became involved in a verbal altercation, and the defendant, who happened upon the scene, beat up the cousin. The victim then hit the defendant. Following that incident, the defendant made numerous attempts to meet up with or confront the victim.
On the day of the murder, the victim was walking down the street near the defendant’s trailer home. The defendant was seen talking on his cellular telephone outside of his trailer. He told the other party on the other end, “Hold on. I gotta handle some business.” The defendant beckoned the victim and his friends to approach him. The victim and the defendant then “squared up like they were [going to] fight.” State v. Morris, 09-0422 at 4, 22 So.3d at 1005. The defendant pulled a gun from under his shirt and shot the victim. The victim attempted to run away, but he tripped and fell, and only managed to crawl a short distance. The defendant fired at the victim five more times. The victim did not have a weapon in his hands. The defendant fled the scene and disposed of the weapon.
On appeal the defendant argued that his trial counsel was ineffective in failing to object, under La. R.S. 14:20(D), to a jury charge referencing retreat. The defendant also complained that counsel was ineffective in failing to request that the trial court charge the jury on the provisions of La. R.S. 14:20. The court found that the defendant’s trial counsel did . not perform deficiently in failing to ask for a special instruction on La. R.S. 14:20, since the trial court gave a sufficient general charge on self-defense. The court further held that even if the defendant’s trial | incounsel was deficient in failing to object to the trial court’s reference to retreat, the defendant was not prejudiced. The court found the erroneous jury charge was harmless. The court reasoned that the defendant confronted the victim in a place where the victim had every right to be, and he shot the victim repeatedly as he tried to escape.
In the present case, considering the evidence at trial and the trial court’s instructions as a whole, we conclude the verdict was surely unattributable to the erroneous jury charge regarding retreat. There was overwhelming evidence that defendant did not act in self-defense. According to eyewitness Ramon Kennard, it was defendant who began the confrontation by bumping into Deandre when the two passed each other on the street.[4] Ramon testified that defendant told the victim, “I been [sic] waiting on this day,” before pulling out his gun. Defendant fired multiple shots at the victim, and then continued to shoot at him even after he turned and ran. Eyewitnesses, Ms. Muse and Christopher Alexander, and even defendant testified that the victim did not have anything in his hands at the time of the shooting. The lethal wounds were inflicted from bullets to the victim’s back that were fired from some distance away. Thus, we find that the erroneous retreat portion of the jury charge in question, certainly did not prejudice the defendant.
In accordance with La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Hicks, 08-402, p. 13 (La.App. 5 Cir. 12/16/08), 3 So.3d 539, 547, we reviewed the record for errors patent. The record shows that at the time he was *7 initially sentenced, defendant was properly advised of the prescriptive period for filing for post-conviction relief as required by La.C.Cr.P. art. 930.8. But, the trial court subsequently vacated the sentence and re-sentenced defendant_[_ywithout advising him of the two-year prescriptive period. By way of this opinion, we advise defendant that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. C.Cr.P. arts. 914 or 922.
For the foregoing reasons, we affirm defendant’s conviction and sentence for second degree murder.

CONVICTION AND SENTENCE AFFIRMED.

. The victim’s name is spelled "De’Andre" throughout the trial transcript, but it is spelled "Deandre" in the indictment.

. Subsections (C) and (D) were added to La. R.S. 14:20 by Act 2006, No. 141, § 1, which became effective August 15, 2006, almost five months before the date of the charged offense.

. La.C.Cr.P. art. 801(C) provides:
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.

. La. R.S. 14:21 states, "[a] person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.” We note that the jury was properly instructed in this regard.