ROLAND L. BELSOME, Judge.
hThe defendant, David Mahler, was indicted for the second degree murder of Craig Zimmer. At his arraignment, the defendant pled not guilty. After a jury trial, the defendant was found guilty of manslaughter. The trial court sentenced the defendant to serve twenty years at hard labor, with credit for time served. The defendant’s conviction and sentence were affirmed by this Court. State v. David Mahler, unpub., 99-0417 (La.App. 4 Cir. 2/7/01), 786 So.2d 982, writ denied, 2001-0663 (La.2/22/02), 809 So.2d 981.
The defendant filed an application for post-conviction relief based upon the failure of the State to provide statements of two witnesses. The district court denied relief, and the defendant sought supervisory review. This Court denied writs. State v. David Mahler, unpub., 04-1018 (La.App. 4 Cir. 9/10/04), writ denied, 2004-2484 (La.2/4/05), 898 So.2d 85. The defendant then filed a petition for habeas corpus relief in the federal district court. The federal district court denied relief. Mahler v. Kaylo, 2006 WL 3513946 (E.D.La. 2006). However, the federal Fifth Circuit Court of Appeal reversed the district court’s ruling and remanded for a new trial. Mahler v. Kaylo, 537 F.3d 494 (5th Cir.2008).
| Subsequently, the State amended the bill of indictment to charge the defendant with manslaughter. On July 23, 2010, after a five day jury trial, the defendant was found guilty of manslaughter. A motion for new trial was filed and denied. On the same day, the trial court sentenced the defendant to serve twenty years at hard labor, with credit for time served. The *628 defendant filed a motion to reconsider sentence which was denied by the trial court. This appeal followed.,

STATEMENT OF FACT

In August 1997, a group of friends, including the victim Craig Zimmer, attended a fishing rodeo in Venetian Isles. At some point during the rodeo a large fight ensued and the police had to intervene. Subsequently, the rodeo was closed and the patrons departed. On the way out of the rodeo, the victim was approached by Nick Mahler who struck him in the face.
After the encounter with Nick, Craig insisted on going to Nick’s house to discuss the altercation. He was accompanied by several friends.[1] Upon arriving at .the Mahler house, Craig and his friends were met by Nick’s uncle, the defendant, David Mahler, and Nick’s father, Chris Mahler. David and Chris Mahler were both armed with guns. According to the testimony of Craig’s companions, Christopher Mahler had his gun pointed at T.J. Willis. Craig wrestled the gun away from Christopher and threw it on the ground. Then David shot Craig in the back. Craig died from his injuries.
The testimony given by Chris Mahler indicated that Craig was shot while he was struggling to get the gun away from Chris. David Mahler also testified at trial and stated that he believed the group of men had weapons and that he was fearful |3for his and his family’s safety. He claimed that he shot Craig while he was trying to take Chris’ gun away from him.

ASSIGNMENT OF ERROR

In his sole assignment of error, the defendant contends that the trial court erroneously instructed the jury that it should consider whether the defendant had an opportunity to retreat before shooting the victim. At both trials, the factual issue for the jury to decide was whether Mr. Mahler acted in self-defense. The defendant contends that the trial court should have charged the jury with the 2006 amendment to La. R.S. 14:20 in the later trial. The trial court did not apply the amendment because it determined the amendment was substantive and had only prospective application. Because the incident occurred in 1997, the trial court charged the jury with the applicable law at the time of the incident.
In 1997 when the incident occurred, the relevant provisions of La. R.S. § 14:20(A) provided that a homicide committed outside of a home, business, or motor vehicle, is “justifiable:”
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
(2) When committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.
. This definition of justifiable homicide provided for in A(l) and (2) is exactly the same now as it was in 1997 when the shooting occurred. However, additional language was added in 2006, when the Louisiana Legislature amended La. R.S. |414:20 to include the following two provi *629 sions, which excluded the need to consider the possibility of retreat as a factor in determining if a homicide was justified:[2]
C. A person who is not engaged in unlawful activity and who is in a place where he or she has a right to be shall have no duty to retreat before using deadly force as provided for in this Section, and may stand his or her ground and meet force with force.
D. No finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used deadly force had a reasonable belief that deadly force was reasonable and apparently necessary to prevent a violent or forcible felony involving life or great bodily harm or to prevent the unlawful entry.
La. R.S. 14:20.
The sole issue before this Court is whether La. R.S. 14:20, as amended, should be applied retroactively or prospectively. The defendant argues that the 2006 amendment clarifies the statute by providing that a defendant claiming self-defense has no duty to retreat. Because it does not change the statute, but merely interprets the existing definition of self-defense, it should be applied retroactively. We disagree.
According to La. R.S. 1:2, the governing rule of statutory construction, “[n]o Section of the Revised Statutes is retroactive unless it is expressly so stated.” However, La. R.S. 1:2 has been construed as coextensive with La. C.C. Art. 6 {Pierce v. Hobart Carp., 939 F.2d 1305,1308 n. 3 (5th Cir.1991) (citing Socorro v. New Orleans, 579 So.2d 931 (La.1991); and Lott v. Haley, 370 So.2d 521 (La.1979))), which codifies the general rule against retroactive application of legislative enactments.[3]
In the absence of.contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
|fiIn Cole v. Celotex Corp., 599 So.2d 1058 (La.1992), the Court outlined a two-step analysis for resolving the statutory construction question under La. C.C. Art. 6. First, we must determine whether the legislature expressed an intent regarding retroactive or prospective application in the enactment. If the legislature did not, the enactment must be classified as substantive, procedural or interpretive. 599 So.2d at 1063.
In St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 816-18 (La.1992), the Court further discussed the application of the analysis by recognizing that the “distinction between interpretive legislation ‘clarifying,’ and substantive legislation ‘amending[1] or ‘changing,’ existing law is an obscure one.” Id. “There is ‘no bright line between substantive laws which change existing standards and interpretive laws which change existing standards by redefining and returning to their ostensible ‘original’ meaning.’ ” Id.
A review of the legislative history here reveals that there is no stated legislative intent indicating that the 2006 amendment to La. R.S. 14:20 should be applied retroactively. The legislative history only reveals that the statute became effective on August 15, 2006. Thus, a determination of whether the amendment is procedural, interpretive or substantive must be made.
There is ample jurisprudence, prior to and after the amendment, substantiating that before August 15, 2006, the possibility *630 of retreat was a factor to be considered in determining whether the accused had a reasonable belief that the úse of deadly force was necessary. See State v. Bailey, 261 La. 881, 261 So.2d 588 (1972); \ State v. Brown, 414 So.2d 726 (La.1982); State v. Dozier, 553 So.2d 911 (La.App. 4 Cir.1989); State v. McClain, 95-2546 (La.App. 4 Cir. 12/11/96), 685 So.2d 590; State v. Johnson, 06-1263 (La.App. 3 Cir. 2/7/07), 948 So.2d 1229; State v. Theriot, 07-71 (La.App. 5 Cir. 6/26/07), 963 So.2d 1012; State v. Ingram, 45,546 (La.App. 2 Cir. 6/22/11), 71 So.3d 437; State v. Franklin, 11-216 (La. App. 5 Cir. 12/28/11), 87 So.3d 860, 874,; State v. Seals, 09-1089 (La.App. 5 Cir. 12/29/11), 83 So.3d 285. Thus, the amendment, which no longer allows for the consideration of the possibility of retreat, is a change in the established law — clearly within the definition of substantive laws provided in St. Paul Fire & Marine Ins. Co. The Second Circuit in State v. Ingram specifically noted:
With these provisions, the legislature has curtailed the evidence that may be offered by the State in proving the use of force unreasonable, and specifically has forbidden the consideration of the possibility of retreat vis-a-vis the use of force. This represents a change in the law, which formerly allowed the consideration of the possibility of escape; see, e.g., State v. Brown, 414 So.2d 726 (La. 1982).
Ingram, supra, p.10, 71 So.3d at 445.
Further, district and appellate courts have applied the prior law in cases where the offense occurred before August 2006 and trial in the matter occurred after August 2006, evidencing a recognition that the 2006 amendment to La. R.S. 14:20 is substantive and may only be applied prospectively. In State v. Seals, the defendant was indicted for first degree murder of a cab driver on August 15, 1991. The defendant was found guilty as charged in 1993. However, the defendant filed an application for post-conviction relief in 1998, which was granted. On June 27, 2006, the original indictment was amended to second degree murder. After a jury trial, the defendant was found guilty as charged. On appeal, the defendant argued that the trial court erred when it refused to give a jury instruction that the defendant 17had no duty to retreat. The Court held that the defendant’s assignment of error was without merit because the “jury instruction required a further explanation as to the possibility of escape being a recognized factor in determining whether defendant had a reasonable belief that deadly force was necessary to avoid the danger.” Seals, p. 74, 83 So.3d at 341-342.
The Fifth Circuit in State v. Franklin, supra and State v. Patterson, 10-415 (La.App. 5 Cir. 1/11/11), 63 So.3d 140, applied the law on the duty to retreat as provided prior to the 2006 amendments. In both cases, the offenses occurred prior the effective date of the amendments, but the trials were held subsequent to August 15, 2006. In Franklin, the offense (second degree murder) occurred in September 2004, and the defendant was found guilty as charged after a jury trial. In its opinion, dated December 28, 2011, the appellate court referenced the law on the retreat. Franklin, p. 22, 87 So.3d at 874. Likewise, in Patterson, the defendant was indicted for second degree murder in October 2005. The defendant was found guilty as charged after a jury trial on November 17, 2009. The court applied the jurisprudence on the law of retreat. Patterson, p.12, 63 So.3d at 149.
In State v. Wright, 42,956, pp. 11-12 (La.App. 2 Cir. 3/5/08), 978 So.2d 1062, 1070-1071, the Second Circuit also applied the law on retreat in its opinion rendered on March 5, 2008. In Wright, the defen *631 dant was found guilty of the second degree murder of Freddezzio Ferguson, which occurred on January 22, 200S.
Thus, the 2006 amendment to La. R.S. 14:20 changes the existing jurisprudence and is substantive in nature. As such, the 2006 amendment can only be applied prospectively. The trial court did not err when it refused to apply the 2006 amendment to the present case. This assignment is without merit.

¡^CONCLUSION

Accordingly, the defendant’s conviction and sentence are affirmed.
AFFIRMED.
LOMBARD, J., dissents.

. Brett Schurr, Mark Schurr, TJ. Willis, Jimmy Amato, Matt Parsons, Chad Nicholls, Conner Prigmore and Jason Martin were at the Mahler house and witnessed the incident.

. The amendment became effective on August 15, 2006. See Acts 2006, No. 141 § 1.

. La. C.C. article 6 states: