PER CURIAM.
11 Writ granted; relief denied. We agree with defendant that there is no meaningful distinction between “retreat” and “escape” for purposes of applying Louisiana’s long-standing jurisprudential rule that a person has no absolute duty to retreat from a life-threatening situation, but that the possibility of retreat is a factor in determining whether the use of deadly force in response was justified under all of the circumstances of the lethal encounter. See State v. Brown, 414 So.2d 726, 729 (La.1982) (“Although there is not an unqualified duty to retreat the possibility of escape is a recognized factor in determining whether or not a defendant had the reasonable belief that deadly force was necessary to avoid the danger.”) (citations omitted). We further agree with defendant that the effect of the 2006 La. Acts 141, amending La.R.S. 14:20 and adding subsections C and D to the statute, was *840 two-fold: a person may choose to defend himself or herself with deadly force under the circumstances defined in R.S. 14:20(A), without considering whether retreat or escape is possible, i.e., a person “may stand his or her ground and meet force with force” (C); and he or she may do so without fear that, if it came to it, a jury may nevertheless second guess the decision not to flee from the encounter in assessing whether the use of deadly force was justified (D). The overall effect of the 2006 amendments was thus to supplant a jurisprudential rule so deeply entrenched in |2Louisiana law that some decisions continue to adhere to it to this day. See, e.g., State v. Vedol, 12-0376, p. 7 (La.App. 5 car. 3/13/13), 113 So.3d 1119, 1124 (“[TJhis Court has continued to recognize that while there is no unqualified duty to retreat from an altercation, the possibility of escape is a recognized factor in determining whether or not a defendant had a reasonable belief that deadly force was necessary to avoid the danger.”) (citation omitted). The legislature is, however, “presumed to have enacted a statute in light of preceding statutes involving the same subject matter and decisions construing such statutes, and, where the new statute is worded differently from the preceding statute, the Legislature is presumed to have intended to change the law.” State v. Johnson, 03-2993, pp. 14-15 (La.10/19/04), 884 So.2d 568, 577 (internal quotation marks and citation omitted).
We nevertheless disagree with defendant that subsection D may be detached from subsection C, and that the former, which plainly states that “[n]o finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used deadly force had a reasonable belief that deadly force was reasonable and apparently necessary,” made only a purely procedural change in the law with respect to how trial judges instruct jurors and therefore applies to all trials conducted after the effective date of its enactment in 2006, although the crime for which the defendant is charged, and for which he claimed the right of self-defense, occurred before that effective date. See State v. Sepulvado, 342 So.2d 630, 635 (La.1977) (“Procedural laws relate exclusively to questions of remedy and, in criminal cases, pertain to the method prescribed for the conduct of the prosecution. Enactments of this nature may regulate the mode of prosecution after their effective date ... for no one has a vested right in a mere mode of procedure.”) (citations omitted). To the extent that subsection D [¡¡effectuates the right conferred by Subsection C on an individual to “stand his or her ground” without weighing the possibility of escape or retreat before responding with deadly force, an unqualified right that did not exist previously in Louisiana, the two subsections work in tandem, not separately, to make a substantive change in the law because they directly impact not only how trials are conducted, and how juries may be instructed, but also how individuals may conduct themselves when confronted with situations that they perceive, reasonably or not, to present an imminent threat to their own lives. Segura v. Frank, 630 So.2d 714, 723 (La.1994) (“Substantive laws establish new rules, rights, and duties or change existing ones.”). As a substantive change in the law, and as the Fourth Circuit found in State v. Mahler, 11-0857 (La.App. 4 Cir. 2/27/13), _ So.3d _, writ denied, 13-0687 (La.11/1/13), 125 So.3d 417, subsections C and D apply together and prospectively only to cases in which the charged crime, as to which the defendant asserts his right of self-defense, occurred after the effective date of the 2006 La. Acts 141.