LANDRIEU, J.,
dissents and assigns reasons.
hi respectfully dissent from the majority’s finding that the trial court erred in its instruction to the jury. Applying rules of statutory interpretation, I am satisfied that the Legislature did not grant the right to “stand your ground” to those who are acting unlawfully. There is ample evidence in this record from which the jury could have concluded that Mr. Wells was engaged in a drug transaction at the time he shot Big Herb and/or that Mr. Wells was the aggressor. Under these facts, I find that Mr. Wells is not protected by the 2006 amendment to Louisiana Revised Statute 14:20.
Since its original passage, Revised Statute 14:20 has been amended several times. Each amendment has expanded the protections afforded to the lawful individual rightfully in his home, place of business or vehicle when suddenly confronted by an intruder. Originating in medieval times, the principle embodied in this statute was commonly referred to as the “castle doctrine,” emphasizing the legislative intent to allow a person to protect his home from its unlawful violation by another without being questioned about the amount of force used to protect it.[1] Amendments to the statute expanded this protection to those lawfully in their |2businesses and vehicles, and ultimately to “any person who is not engaged in unlawful activity and who is in a place where he or she has a right to be.” See La. R.S. 14:20 C. Because these individuals do not have a duty to retreat, it makes sense that the legislature also included in the 2006 amendment a provision prohibiting a jury and/or judge from considering the possibility of retreat as a factor in determining whether the use of deadly force by such an individual was reasonable and therefore justifiable as self-defense. See La. R.S. 14:20 D.
Mr. Wells, however, is not such an individual. Instead, he is a person who shot and killed another person under circumstances which clearly permit a reasonable factfinder to conclude that Mr. Wells either was the aggressor (and therefore not entitled to claim self-defense by virtue of La. R.S. 14:21), or alternatively, was en *171 gaged in unlawful activity (attempting to purchase illegal drugs) and/or was not in a place where he had a right to be at the time he committed this homicide.
According to his own testimony, Mr. Wells went to the trailer park on the day in question to purchase marijuana from Big Herb, from whom he had bought marijuana before. When Big Herb insisted he did not have any marijuana for the price Mr. Wells was willing to pay, but had only a more expensive grade, Mr. Wells argued with him. Mr. Wells further testified that Big Herb then got his gun, and while pointing and waving it at Mr. Wells, twice ordered him to leave. Mr. Wells instead walked back to his own parked vehicle and retrieved his own gun. When Mr. Wells turned around to face Big Herb, he noticed that Big Herb was “messing with the slide” of his gun. Mr. Wells testified that he then shot Big Herb because he feared Big Herb was about to shoot him. A unanimous jury convicted Mr. Wells of manslaughter.
A homicide is justifiable as self-defense only if it is committed by “one who reasonably believes that he is in imminent danger of losing his life or receiving |.-¾great bodily harm and that the killing is necessary to save himself from that danger.” La. R.S. 14:20 A(l) (Emphasis supplied). The majority holds that under the circumstances presented here, it was reversible error for the trial court to instruct the jury that one of the factors it could consider in deciding whether Mr. Wells acted in self-defense is the possibility that he could have avoided the necessity of taking human life by retreating. I do not believe the trial court’s inclusion of this jury instruction, in addition to subsections A (1 & 2), C and D of La. R.S. 14:20, was error considering the facts of the present case.
The majority finds error here because it . interprets the 2006 amendment to La. R.S. 14:20 as having completely abrogated the use of the longstanding jury instruction stating that “the possibility of retreat” is one of the factors a jury may consider in determining whether a homicide defendant claiming self-defense possessed a reasonable belief that he was in imminent danger of losing his life or receiving great bodily harm. The majority concludes that the unqualified language of Section D of the statute prohibiting finders of fact from considering the possibility of retreat signifies that it is no longer appropriate for the trial court to give this jury instruction under any circumstances, even where the facts indicate that the defendant, at least arguably, was acting unlawfully and/or was not in a place where he had a right to be. In essence, the majority finds that subsection D “stands alone,” such that it is not qualified by subsection C (which was also added by the 2006 amendment) or by any of the preceding subsections of the statute.
I disagree. I find that the majority’s interpretation is not only unreasonable, but as the facts of this case prove, under certain circumstances produces absurd results. The majority holds that the jury, in deciding whether Mr. Wells reasonably believed that he was in imminent danger of losing his life and that the killing of Big Herb was necessary to save himself from that danger, was prohibited from considering that Mr. Wells, instead of going to his car and retrieving his gun, |4could have simply gotten into his car and driven away. I submit that, under these circumstances, it would be virtually impossible for a reasonable juror not to consider this possibility when evaluating Mr. Wells’? conduct. This anomaly alone suggests that the majority’s interpretation of the statute is incorrect.
More significantly, I believe that the majority’s interpretation is flawed because the legal premise upon which it is based is *172 flawed. According to the majority, its interpretation of La. R.S. 14:20 is mandated by the Louisiana Supreme Court’s recent per curiam in State v. Wilkins, 2013-2539 (La.1/15/14), 131 So.3d 839. The majority’s conclusion, however, is not supported by Wilkins, which does not address the precise issue before us:. whether the longstanding jury instruction allowing the consideration of the possibility of retreat has been completely abrogated by the 2006 amendment to La. R.S. 14:20, or whether that instruction may still be appropriate when there is evidence, as here, from which a reasonable factfinder could conclude that the defendant was either “engaged in unlawful activity” and/or was not “in a place where he had a right to be.” In Wilkins, the issue was whether the 2006 amendment adding subsections C and D[2] effected a substantive, rather than a purely procedural, change in the law, such that the amended statute could not be applied retroactively to defendants whose offenses occurred before the effective date of the amendment. The Supreme Court held that the addition of subsections C and D made a substantive change in the law. In so holding, the Supreme Court cited with approval this court’s earlier decision in State v. Mahler, 2011-0857 (La.App. 4 Cir. 2/27/13), 157 So.3d 626, 2013 WL 749732 (Lombard, J., dissenting), writ denied, 2013-0687 (La.11/1/13), 125 So.3d 417, in which we held that the amendment was substantive and therefore could not be applied retroactively to Mr. Mahler. I agree with the holding in Mahler and ^acknowledge that the Supreme Court has foreclosed this issue in Wilkins by deciding that retroactive application of the 2006 amendment to those whose offenses occurred before the amendment’s effective date is prohibited.
However, there is no retroactivity issue in the present case. The killing of Big Herb occurred in 2008, after the effective date of the amendment. The issue here is not whether the 2006 amendment made a substantive change in the law. Rather, the issue we face in this case is the precise nature of that change. Exactly how has the law changed? Specifically, does the prohibition expressed in La. R.S. 14:20 D (preventing the factfinder from considering the possibility of retreat) apply to all homicide defendants claiming self-defense, or only to those addressed in the preceding subsections of the statute, particularly subsection C? La. R.S. 14:20 C, added with subsection D in the 2006 amendment, provides:
A person who is not engaged in unlawful activity and who is in a place where he or she has a right to be shall have no duty to retreat before using deadly force as provided for in this Section, and may stand his or her ground and meet force with force.
The Wilkins Court, in deciding the retro-activity issue, specifically rejected the argument that subsection D reflects a merely procedural change in the law with respect to how trial courts instruct jurors and therefore should apply to all trials conducted after the effective date of the amendment even where the alleged crime was committed prior to that date. In response to this argument, the Supreme Court stated “We nevertheless disagree with defendant that subsection D may be detached from subsection C.... ” 2013-2539, p. 2, 131 So.3d at 839. The Court further noted: “To the extent that subsection D effectuates the right conferred by subsection C on an individual to ‘stand *173 his or her ground’ without weighing the possibility of escape or retreat before responding with deadly force, an unqualified right that did not exist previously in Louisiana, the two subsections work in tandem, not separately, to make a substantive change in the law....” Id., pp. 2-3, 131 So.3d at 839. This language in Wilkins seems diametrically opposed to the majority’s position in the present case holding that subsection D stands alone and is not modified, qualified or otherwise affected by either subsection C or the preceding subsections of the statute.
If, as the Supreme Court has indicated, “subsection D effectuates the right conferred by subsection C,” then subsection D’s direction that “No finder of fact shall be permitted to consider the possibility of retreat as a factor ...” applies only to a defendant “who is not engaged in unlawful activity and who is in a place where he or she has a right to be” as provided in subsection C, or to a defendant who is lawfully within a dwelling, place of business or vehicle, as provided in the preceding subsections of the statute. In my view, this is the only logical and reasonable interpretation of the 2006 amendment to La. R.S. 14:20.
I am guided by basic civil law principles of statutory interpretation. The starting point for the interpretation of any statute is the language of the statute itself. In re Succession of Boyter, 99-0761, p. 10 (La.1/7/00), 756 So.2d 1122, 1129. “When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.” La. C.C. art. 10. Civil Code article 12 further provides: “When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.”
Subsections B, C and D of La. R.S. 14:20 were enacted together as part of the same amendment. This amendment also deleted certain sentences from parts of subsection A, which section, prior to the 2006 amendment, encompassed the entirety of the “Justifiable Homicide” statute. Reading the text of La. R.S. 14:20 reveals that the entire statute is clearly written to distinguish between those who are acting lawfully and those who are not. Section B establishes a presumption that a person who is lawfully inside a dwelling, place of business, or vehicle was ^justified in using deadly force to defend against an unlawful intruder, regardless of whether the person using the force had an opportunity to retreat. Section A(4), which also applies to one who is lawfully inside a dwelling, place of business or vehicle and who kills an intruder, specifically exempts one who is “in the acquisition of, distribution of, or possession of, with intent to distribute” an illegal drug at the time he commits the homicide. La. R.S. 14:20(A)(4)(b). Nothing in the statute indicates that Section D was intended to stand on its own or to abrogate longstanding jurisprudence permitting the factfinder to consider the possibility of retreat as a factor in determining whether the use of deadly force by a person not covered by La. R.S. 14:20 (one who is not acting lawfully) was reasonable or necessary.
It is undeniable that the entire statute is designed to allow a law-abiding individual in his home, vehicle, place of business or anywhere else he has a right to be to defend himself with force when confronted by someone who threatens his safety, without having to second-guess his decision to use force rather than to retreat from the situation. Therefore, interpreting subsection D to include individuals who are acting unlawfully and/or are in a place they have no right to be is incongruous given the context of the statute as a whole.
*174 Additionally, such an interpretation does not comport with the legislative history of the 2006 amendment. Minutes from the April 9, 2006 House Committee meeting regarding the amendment describe subsection D’s prohibition of the consideration of the possibility of retreat as being applicable only “under certain circumstances.”[3] The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason that prompted the legislature to enact the law. In re Succession of Boyter, 99-076, p. 9, 756 So.2d at 1128 (citing Fontenot v. Chevron U.S.A., Inc., 95-1425 (La.7/2/96), 676 So.2d 557).
I do not believe that La. R.S. 14:20, in its original version or as amended, was intended to protect someone who is acting unlawfully or who is not in a place where he has a right to be. I therefore cannot agree with the majority’s adoption of such an illogical interpretation of the statute.
The trial judge, who prior to trial stated on the record that she would include the instruction allowing the jurors to consider the possibility of retreat “if the evidence show[ed] that Mr. Wells was there to buy marijuana,” presumably also interpreted subsection D of La. R.S. 14:20 as being inseparable from subsection C. After Mr. Wells himself testified that he had sought out Big Herb in order to buy marijuana from him and was arguing with him about the price, the trial judge apparently concluded that the jury instruction was warranted based upon this evidence. There is no question that, based on this evidence, the jury could have reasonably concluded that Mr. Wells was acting unlawfully and/or that he was not in a place where he had a right to be.
Under these circumstances, I do not find that the jury instructions were improper or erroneous. I also do not agree with the majority that the instructions were “internally contradictory and confusing.” There is no evidence of juror confusion in the record. The jury asked no questions of the trial judge, and they reached a unanimous verdict.
I recognize, however, that the 2006 amendment to La. R.S. 14:20 has generated seemingly inconsistent rulings from the various state courts of appeal, including this court. I believe some of those inconsistencies can be explained by the differences in the facts of each particular case. (Cf., e.g.: State v. Barnes, 2011-1421 (La.App. 4 Cir. 9/19/12), 100 So.3d 926, and State v. Mahler, supra).
| ¡¡Regardless, since the passage of the 2006 amendment to La. R.S. 14:20, this court and the courts of the other appellate circuits have continued to cite as the law that, “[w]hile there is no unqualified duty to retreat, the possibility of escape from an altercation is a recognized factor to be considered in determining whether a homicide defendant claiming self-defense had a reasonable belief that the use of deadly force was necessary.” This longstanding principle has been cited relative to the general law of justifiable homicide set forth in La. R.S. 14:20, as well as specifically where the issue is whether the defendant acted as the aggressor, in which case he would be precluded from claiming self-defense by La. R.S. 14:21. In multiple cases in which the homicides in question occurred after the effective date of the 2006 amendment to La. R.S. 14:20, the above-quoted principle has been cited as the law without the issue of its continued validity being squarely raised. See, e.g.: State v. Barnes, supra; State v. Brooks, 47,394, p. 11 (La.App. 2 Cir. 12/12/12), 108 So.3d 161, 169 n. 6; State v. Mincey, 2008- *175 1315, p. 3 (La.App. 3 Cir. 6/3/09), 14 So.3d 613, 615; State v. Dennis, 2012-818, pp. 8-9 (La.App. 5 Cir. 5/16/13), 118 So.3d 1166, 1172; State v. Pham, 2012-635, p. 14 (La.App. 5 Cir. 5/16/13), 119 So.3d 202, 212; State v. Sinceno, 2012-118, p. 10 (La.App. 5 Cir. 7/31/12), 99 So.3d 712, 719; State v. King, 2011-767, p. 8 (La.App. 5 Cir. 2/28/12), 88 So.3d 1147, 1153; State v. Carraby, 2011-540, p. 13 (La.App. 5 Cir. 2/14/12), 88 So.3d 608, 617; State v. Terrell, 2008-1189, p. 12 (La.App. 5 Cir. 2/25/09), 9 So.3d 245, 252.
When the issue has been specifically raised, often as part of the defendant’s claim that his counsel was ineffective, the responses of the appellate courts have been inconsistent.[4] See, e.g.: State v. Ingram, 45,546 (La.App. 2 Cir. 6/22/11), 71 So.3d 437; State v. Deckelman, 2011-0296 (La.App. 1 Cir. 9/14/11), 2011 WL 4436529 (unpub.); State v. Morris, 2009-0422 (La.App. 1 Cir. 9/11/09), 22 So.3d 1002; State v. Kelly, 2010-528 (La.App. 5 Cir. 1/11/10), 60 So.3d 1; State v. Seals, 2009-1089 (La.App. 5 Cir. 12/29/11), 83 So.3d 285.
Given the plethora of seemingly conflicting jurisprudence on this issue, I believe the trial and appellate courts would benefit from a definitive Louisiana Supreme Court decision squarely addressing it. Despite the majority’s holding here, Wilkins is not that decision. I also do not believe the trial court was bound by our decision in State v. Mahler to reject the jury instruction allowing consideration of the possibility of retreat by Mr. Wells. Mahler involved a defendant who was in his brother’s home when allegedly confronted by hostile individuals angry at his nephew. Because he was lawfully in a dwelling, the defendant in Mahler is the type of individual who would clearly be covered by subsections A, B, and C (and therefore also by subsection D) of La. R.S. 14:20 if his offense had occurred after the effective date of the amendment. I believe, however, that except for its holding as to retroactivity, Mahler is limited to its facts. As I have noted here, the facts of the present case are materially different.
For these reasons I cannot agree with the majority’s conclusion that the jury instructions in this case were erroneous. I also strongly disagree with the majority’s conclusion, after finding error, that such error requires reversal of the jury’s verdict in this case.
A conviction will not be overturned on the grounds of an erroneous jury charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial. An erroneous instruction is subject to harmless error review or, in the case of an ineffective assistance of counsel claim, an analysis of whether the defendant was prejudiced by the error. The question becomes whether it appears beyond a reasonable doubt that the |uerroneous instruction did not contribute to the jury’s finding of guilt or whether the error is unimportant in relation to everything else the jury considered, as revealed in the record. Stated another way, the appropriate standard for determining harmless error is whether the guilty verdict was surely unattributable to the jury charge error. Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993).
In this case any error, regarding the complained-of jury instruction would be harmless because there was sufficient evidence from which the jury could have de *176 termined the defendant’s guilt beyond a reasonable doubt without considering whether he had an opportunity to retreat. The majority finds that there was sufficient evidence to convict Mr. Wells of manslaughter, but nevertheless cannot say that the verdict was surely unattributable to the erroneous jury instructions. I strongly disagree.
Based on the evidence presented here, a reasonable jury could have found Mr. Wells to be the aggressor, in which case he would not be entitled to claim self-defense at all. See La. R.S. 14:21. Eyewitnesses testified that Big Herb did not threaten or provoke Mr. Wells, but that Mr. Wells was provoking Big Herb. Mr. Wells himself testified that he persisted in arguing with Big Herb because he did not believe what Big Herb was telling him. When Mr. Wells asked Big Herb why he had a gun, Big Herb responded that he needed the gun for protection at all times, and that the gun had nothing to do with Mr. Wells.
Moreover, even without considering whether Mr. Wells had the opportunity to retreat, the jury could have found that he did not have a reasonable fear that he was in imminent danger of losing his life or receiving great bodily harm when he shot Big Herb. The evidence showed that Mr. Wells was angry at Big Herb for not providing him with the marijuana he sought. No witness, including Mr. Wells himself, testified that Big Herb was pointing his gun at Mr. Wells or was | ^threatening him at the time of the shooting. Mr. Wells testified that Big Herb was “fiddling with” the slide of his gun. A reasonable jury faced with this evidence could have determined that Mr. Wells’? actions were primarily motivated by anger rather than fear.
Under the circumstances presented here, I would unequivocally find any error in the jury instructions to be harmless. I do not believe the overturning of this unanimous jury verdict is warranted.
For the reasons stated, I would affirm Mr. Wells’? conviction and sentence. I therefore respectfully dissent.

. See: Sarah Ochs, Can Louisiana’s Self-Defense Law Stand It’s Ground?: Improving the Stand Your Ground Law in the Murder Capital of America, 59 Loy. L.Rev. 673, 681 (2013).

. Subsection B, also added, reiterates certain factors already present in subsection A and creates a presumption that applies when these factors are present. Subsections C and D appear to reflect new law.

. LA B. Digest, Engrossed, 2006 Reg. Sess.

. Nevertheless, I have not found a single case in which the giving of the jury instruction in question (or the defense counsel’s failure to object to such instruction) has been held to be reversible error.