# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #063

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **8th day of December, 2015**, are as follows:

**PER CURIAMS**:

2014-K -1701          STATE OF LOUISIANA v. CHRISTOPHER J. WELLS (Parish of Orleans)
                      (Second Degree Murder)

                      Accordingly, the ruling of the court of appeal is reversed and
                      the matter is remanded for consideration of defendant's remaining
                      assignments of error.
                      REVERSED AND REMANDED.

SUPREME COURT OF LOUISIANA

NO. 2014-K-1701

STATE OF LOUISIANA

VERSUS

CHRISTOPHER J. WELLS

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ORLEANS

**PER CURIAM**:

Defendant Christopher J. Wells shot and killed Brandon McCue on May 4, 2008. Defendant shot the victim four times at close range in front of eyewitnesses in the parking area of the trailer park on Chef Menteur Highway where McCue lived. Defendant was charged with second degree murder. He admitted he shot the victim but claimed he did so in self-defense.

At trial, the state's witnesses testified defendant came to the parking area to purchase marijuana from the victim but drove away when the victim told him he had none to sell. Defendant then returned after a short time and began goading the victim, who had a handgun but never brandished it or threatened defendant with it. The victim exited his vehicle and defendant returned to his own, retrieved a handgun, and shot the victim. Defendant also testified he came to the parking area hoping to purchase marijuana from the victim. He said they argued when the victim claimed he had none to sell. According to defendant, the victim then pointed a handgun at him and instructed him to leave. Defendant returned to his own vehicle, retrieved a

handgun, and shot the victim because he saw him "messing with the slide" of his weapon.

The jury found defendant guilty of manslaughter and the trial court sentenced him to serve 25 years imprisonment at hard labor. Defendant appealed contending, among other claims, that the jury was incorrectly instructed as to what constitutes justifiable homicide, which is governed by La.R.S. 14:20 and at the time of this homicide provided:

A. A homicide is justifiable:

(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.

(2) When committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.

(3) When committed against a person whom one reasonably believes to be likely to use any unlawful force against a person present in a dwelling or a place of business, or when committed against a person whom one reasonably believes is attempting to use any unlawful force against a person present in a motor vehicle as defined in R.S. 32:1(40), while committing or attempting to commit a burglary or robbery of such dwelling, business, or motor vehicle.

(4)(a) When committed by a person lawfully inside a dwelling, a place of business, or a motor vehicle as defined in R.S. 32:1(40), against a person who is attempting to make an unlawful entry into the dwelling, place of business, or motor vehicle, or who has made an unlawful entry into the dwelling, place of business, or motor vehicle, and the person committing the homicide reasonably believes that the use of deadly force is necessary to prevent the entry or to compel the intruder to leave the premises or motor vehicle.

(b) The provisions of this Paragraph shall not apply when the person committing the homicide is engaged, at the time of the homicide, in the acquisition of, the distribution of, or possession of, with intent to distribute a controlled dangerous substance in violation

2

of the provisions of the Uniform Controlled Dangerous Substances Law.

B. For the purposes of this Section, there shall be a presumption that a person lawfully inside a dwelling, place of business, or motor vehicle held a reasonable belief that the use of deadly force was necessary to prevent unlawful entry thereto, or to compel an unlawful intruder to leave the premises or motor vehicle, if both of the following occur:

(1) The person against whom deadly force was used was in the process of unlawfully and forcibly entering or had unlawfully and forcibly entered the dwelling, place of business, or motor vehicle.

(2) The person who used deadly force knew or had reason to believe that an unlawful and forcible entry was occurring or had occurred.

C. A person who is not engaged in unlawful activity and who is in a place where he or she has a right to be shall have no duty to retreat before using deadly force as provided for in this Section, and may stand his or her ground and meet force with force.

D. No finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used deadly force had a reasonable belief that deadly force was reasonable and apparently necessary to prevent a violent or forcible felony involving life or great bodily harm or to prevent the unlawful entry.

In addressing this claim, the court of appeal reproduced the pertinent jury instructions as follows:

Justifiable homicide. A homicide is justifiable, one, when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm, and that the killing is necessary to save himself from that danger; two, when committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed, and that such action is necessary for its prevention.

The circumstances must be sufficient to excite fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.

Three, a person who is not engaged in unlawful activity and who is in a place where he or she has a right to be shall have no duty to retreat before using deadly force as provided for in this section, and may stand his or her ground and meet force with force.

3

Four, no finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used deadly force was reasonable and apparently reasonable to prevent a violent or forcible felony involving life or great bodily harm to prevent the unlawful—the lawful entry.

Burden of proof, justification defense. If you find that the defendant has raised the defense that his conduct was justified, the State must prove that the defendant's conduct was not justified. Remember, the State bears the burden of proving the guilt of the defendant beyond a reasonable doubt.

Self-defense. A homicide is justifiable if committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm, and that the killing was necessary to save himself from that danger. The danger need not have been real, as long as the defendant reasonably believed that he was in actual danger.

Some factors that you should consider in determining whether the defendant had a reasonable belief that the killing was necessary, number one, the possibility of avoiding the necessity of taking human life by retreat; number two, the excitement and confusion of the occasion; number three, the possibility of avoiding of preventing the danger to himself by using force less than killing; and four, that the defendant's knowledge of his assailant's dangerous character.

Thus, if you find, number one, that the defendant killed in self-defense; and two, that the defendant believed that he was in danger of losing his life or receiving great bodily harm; and three, that the defendant believed the killing was necessary to save himself from the danger; and four, that the defendant's beliefs were reasonable in light of the circumstances, then you must find the defendant not guilty.

Burden of proof, self-defense. A defendant who raises the defense that he acted in self-defense does not have the burden of proof on that issue. The State must prove beyond a reasonable doubt that the homicide was not committed in self-defense.

Aggressor doctrine. A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense, unless he withdraws from the conflict in good faith and in such a manner that his adversary knows, or should know, that he desires to withdraw and discontinue the conflict.

In determining whether or not the defendant was the aggressor, you must consider the nature of the confrontation and whether the victim's actions were a reasonable response.

4

> Thus, if you find that the defendant was the aggressor or that he brought on the difficulty, you must reject his claim of self-defense unless you find, number one, that he withdrew from the conflict and two, that his withdrawal was in good faith; and three, that he withdrew in a manner that put his adversary on notice that he wished to withdraw and discontinue the conflict.

State v. Wells, 11-0744, pp. 19-20 (La. App. 4 Cir. 7/11/14), 156 So.3d 150, 162-63 (emphasis and italics omitted).

The court of appeal noted that La.R.S. 14:20 was amended by 2006 La. Acts 141 to add Section D above, which prohibits the finder of fact from considering the possibility of retreat as a factor in determining whether the use of deadly force was reasonable and necessary. The court of appeal found the instructions were internally contradictory and confusing because "[o]n the one hand, the trial judge instructs the jury that they are specifically prohibited from considering the possibility of retreat as a factor in determining whether or not the person who used deadly force was reasonable and the actions apparently reasonable to prevent a violent or forcible felony, . . . [but] on the other hand, not much later she counters that instruction with the instruction that the jurors may consider the possibility of avoiding the necessity of taking human life by retreat when evaluating the reasonableness of the defendant's beliefs at the time of the killing . . . ." Wells, 11-0744, pp. 21-22, 156 So.3d at 164. Citing this Court's determination in State v. Wilkins, 13-2539, p. 1 (La. 1/15/14), 131 So.3d 839, 839-40, that the effect of the 2006 amendment was to supplant "Louisiana's long-standing jurisprudential rule that a person has no absolute duty to retreat from a life-threatening situation, but that the possibility of retreat is a factor in determining whether the use of deadly force in response was justified under all of the circumstances of the lethal encounter," the

5

court of appeal found the trial court erred in instructing jurors—in a homicide committed after the 2006 amendment—that they could consider the possibility of retreat as a factor in determining whether the use of deadly force was reasonable:

> Thus, in light of the clarity of the Legislature's adoption of Article 20 D and now in light of Wilkins as well as the unanimity among the Mahler panel members as to the scope of the prohibition set forth in the article, we discern no basis to deviate from their expression of the import and application of Article 20 D in a killing which occurred after its effective date. Thus, the trial court's jury instructions comport neither with the directive of Article 20 D or controlling precedent.
>
> Accordingly, we find that the jury instructions which directed or authorized the jurors to consider the possibility of the defendant's retreat in determining whether the killing was necessary were not merely confusing but also legally erroneous.

Wells, 11-0744, p. 23-24, 156 So.3d at 165 (footnote omitted).

Correctly recognizing that "harmless-error analysis applies to instructional errors so long as the error at issue does not categorically 'vitiat[e] all the jury's findings'", Hedgpeth v. Pulido, 555 U.S. 57, 61, 129 S.Ct. 530, 532, 172 L.Ed.2d 388 (2008) (citing Neder v. United States, 527 U.S. 1, 11, 119 S.Ct. 1827, 1834, 144 L.Ed.2d 35 (1999) and quoting Sullivan v. Louisiana, 508 U.S. 275, 281, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993)), the court of appeal found it could not declare beyond a reasonable doubt that the error in providing conflicting instructions on the duty to retreat was harmless. Specifically, the court of appeal found, in light of the prosecutor's repeated references to the possibility of retreat, that any confusion experienced by jurors as a result of the conflicting instructions was likely resolved in favor of believing the possibility of retreat was a consideration in determining whether the use of deadly force was reasonable. See Wells, 11-0744, p. 31, 156 So.3d at 169. Based on factual

6

discrepancies in the testimony regarding whether the victim brandished his handgun or not, the court of appeal found if the jury had not been instructed, contrary to La.R.S. 14:20(D), that they could consider the possibility defendant could retreat rather than use deadly force, then they might have found defendant acted reasonably in shooting the victim. See Wells, 11-0744, p. 32, 156 So.3d at 169-70.

One member of the panel (Landrieu, J.) dissented on the basis that defendant was engaged in the unlawful act of attempting to buy marijuana when he shot the victim, and the 2006 amendment to La.R.S. 14:20 clearly distinguishes between persons who are engaged in lawful and unlawful activities. The dissent noted that the legislature in La.R.S. 14:20(C) declared that a person who is not engaged in an unlawful activity and who is in a place where he or she has a right to be has no duty to retreat before using deadly force. Likewise, in the closely related provision of La.R.S. 14:20(D), the legislature prohibited a finder of fact from considering the possibility of retreat as a factor in determining whether the person who used deadly force in accordance with Section C acted reasonably. See Wells, 11-0744, p. 1-2, 156 So.3d at 170 (Landrieu, J., dissenting) ("Because these individuals do not have a *duty* to retreat, it makes sense that the legislature also included in the 2006 amendment a provision prohibiting a jury and/or judge from considering the *possibility* of retreat as a factor in determining whether the use of deadly force by such an individual was reasonable and therefore justifiable as self-defense."). Thus, the dissent would find in the present case, in which defendant admitted he was engaged in an unlawful act, that La.R.S. 14:20(D) did not prohibit jurors from considering whether defendant could have retreated in determining whether he acted reasonably in resorting

7

to deadly force, and therefore the trial court did not err in instructing the jury.

We granted the state's application to review the correctness of the ruling of the court of appeal. Finding the court of appeal erred for the reasons that follow, we reverse and remand for consideration of defendant's remaining assignments of error.

The 2006 amendment originated as H.B. 89, which, according to its digest, proposed amending La.R.S. 14:19 (pertaining to use of force or violence in defense) and La.R.S. 14:20 (pertaining to justifiable homicide) to make three changes to the law. First, the bill would establish "a presumption that a person lawfully inside a dwelling, place of business, or motor vehicle held a reasonable belief that the use of force or violence or deadly force was necessary to prevent unlawful entry thereto, or to compel an unlawful intruder to leave the premises or motor vehicle", when two conditions are met:

> (1) The person against whom the force or violence was used was in the process of unlawfully and forcibly entering or had unlawfully and forcibly entered the dwelling, place of business, or motor vehicle.

> (2) The person who used force or violence knew or had reason to believe that an unlawful and forcible entry was occurring or had occurred.

Second, according to the digest, the bill would create a right to stand one's ground by providing that "a person who is not engaged in unlawful activity and who is in a place where he or she has a right to be shall have no duty to retreat before using force, violence, or deadly force and may stand his or her ground and meet force with force." Third, the bill would provide "immunity from criminal prosecution for use of force or justifiable homicide when force is used pursuant to proposed law." The bill was amended in the House

8

Committee on the Administration of Criminal Justice to replace immunity from prosecution with provisions prohibiting a finder of fact from considering the possibility of retreat as a factor in determining whether the person who used force or violence or deadly force did so reasonably.[1]

A National Rifle Association spokesperson addressed the House Committee on April 19, 2006, in support of the bill. In response to questioning, the spokesperson clarified that, although the proposed presumption would apply only when a person who is lawfully inside his or her dwelling, place of business, or motor vehicle, is threatened by an intruder, a person would be relieved of the duty to retreat under the proposed law (by the provision that would prohibit a finder of fact from considering the possibility of retreat) wherever he or she may be threatened, provided the person threatened is lawfully present there and not engaged in unlawful

---

[1] The original Sections D of La.R.S. 14:19 and 20 proposed in the bill were identical:

> A person who uses force or violence as provided for by this Section is immune from criminal prosecution for the use of force or violence.

The amendments replaced those Sections D with the following:

AMENDMENT NO. 1

> On page 2, delete lines 10 through 14 in their entirety and insert in lieu thereof the following:

> "[La.R.S. 14:19] D. No finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used force or violence in defense of his person or property had a reasonable belief that force or violence was reasonable and apparently necessary to prevent a forcible offense or to prevent the unlawful entry."

AMENDMENT NO. 2

> On page 4, delete lines 3 through 8 in their entirety and insert in lieu thereof the following:

> "[La.R.S. 14:20] D. No finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used deadly force had a reasonable belief that deadly force was reasonable and apparently necessary to prevent a violent or forcible felony involving life or great bodily harm or to prevent the unlawful entry."

activity. In response to questioning whether this latter aspect of the law would be too broad an extension of the traditional "castle doctrine" beyond the confines of the home that would result in a "Wild West" scenario, both the spokesperson and the bill's sponsor emphasized that the scope of the proposed law is substantially restricted by the requirement that a person be engaged in lawful activity and be in a place where he or she has a right to be. The spokesperson and the bill's sponsor each reiterated that, under the proposed law, the use of force must still be reasonable and apparently necessary.[2] The spokesperson emphasized that a woman who is engaged in lawful activity and present where she has the right to be, whether inside her home or on the street, should not have to engage in a different mental calculation, depending on where she is assaulted, in deciding to defend herself.

This legislative history lends support to this Court's previous determination in State v. Wilkins, 13-2539, pp. 1-2 (La. 1/15/14), 131 So.3d 839-40, that:

> [T]he effect of the 2006 La. Acts 141, amending La.R.S. 14:20 and adding subsections C and D to the statute, was two-fold: a person may choose to defend himself or herself with deadly force under the circumstances defined in R.S. 14:20(A), without considering whether retreat or escape is possible, *i.e.,* a person "may stand his or her ground and meet force with force" (C); and he or she may do so without fear that, if it came to it, a jury may nevertheless second guess the decision not to flee from the encounter in assessing whether the use of deadly force was justified (D). The overall effect of the 2006 amendments was thus to supplant a jurisprudential rule so deeply entrenched in Louisiana law that some decisions continue to adhere to it to this day. See, e.g., State v. Vedol, 12-0376, p. 7 (La. App. 5 Cir. 3/13/13), 113 So.3d 1119, 1124 ("[T]his Court has continued to

---

[2] Thus, a distinction was drawn by the bill's sponsor between a situation in which an attacker ceases the attack, surrenders, and places his gun on the floor (implying a violent response may no longer be reasonable or necessary) from that in which a person is threatened with a gun and has to gamble (under pre-amendment law) on whether escape will be judged in hindsight to have been a viable option.

recognize that while there is no unqualified duty to retreat from an altercation, the possibility of escape is a recognized factor in determining whether or not a defendant had a reasonable belief that deadly force was necessary to avoid the danger.") (citation omitted).

This Court also found in Wilkins, 13-2539, p. 2, 131 So.3d at 840, that Section D's provision that "[n]o finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used deadly force had a reasonable belief that deadly force was reasonable and apparently necessary," cannot be detached from Section C, which permits only those persons "who [are] not engaged in unlawful activity and who [are] in a place where [they have] a right to be" to stand their ground (which finding is also consistent with the legislative history described above). Thus, this Court found that "[t]o the extent that subsection D effectuates the right conferred by Subsection C on an individual to 'stand his or her ground' without weighing the possibility of escape or retreat before responding with deadly force, an unqualified right that did not exist previously in Louisiana, the two subsections work in tandem, not separately, to make a substantive change in the law because they directly impact not only how trials are conducted, and how juries may be instructed, but also how individuals may conduct themselves when confronted with situations that they perceive, reasonably or not, to present an imminent threat to their own lives." Wilkins, 13-2539, p. 2-3, 131 So.3d at 840. Thus, the dissent in the present case suggests the majority erred in considering in isolation rather than in tandem the prohibition against a jury considering the possibility of retreat, established in Section D, from the restrictions on the right to stand one's ground, provided in Section C. See Wells, 11-0744, p. 3, 156 So.3d at 172 ("In essence, the majority finds that subsection D 'stands alone,' such

11

that it is not qualified by subsection C . . . or by any of the preceding subsections of the statute."). In light of the legislative history and <u>Wilkins</u>, the dissent is correct in that assessment.

Given that several versions of the shooting were presented through the testimonies of eyewitnesses, it is difficult to conclude that the jury instruction described above is in error. Various witnesses claimed: defendant was the aggressor; he was not the aggressor; the victim brandished a weapon; the victim did not brandish a weapon; defendant briefly left after attempting unsuccessfully to purchase marijuana; and defendant did not leave after attempting unsuccessfully to purchase marijuana. The trial court, obligated by La.C.Cr.P. art. 802(1) to charge the jury on the law applicable to the case, including "every phase of the case supported by the evidence whether or not accepted by [her] as true", <u>State v. Marse</u>, 365 So.2d 1319, 1323 (1978), provided a lengthy instruction that was likely intended to cover each of these different versions of the incident. The instruction was not ideal, however, and, as noted by the court of appeal contained apparently contradictory elements.[3] It might have been better tailored to guide the jury

---

[3] The Supreme Court in <u>Killian v. United States</u>, 368 U.S. 231, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961), in a case involving a defendant charged with making a false statement regarding his Communist Party affiliation, rejected a defendant's claim that the jury instruction defining affiliation was fatally flawed because of its contradictory and confusing nature:

> Petitioner argues that because the first paragraph of the instruction stated that affiliation 'means a relationship short of and less than membership in the Communist Party, but more than that of mere sympathy for the aims and objectives of the Communist Party,' and the third paragraph of the instruction stated that 'affiliation . . . means a relationship which is equivalent or equal to that of membership in all but name,' it was contradictory and confusing. We agree that the third paragraph appears inconsistent with the first. However, it is evident that the erroneous third paragraph could not have prejudiced petitioner for it, though inconsistent with the correct first paragraph, exacted a higher standard of proof of affiliation than the law required.

> Petitioner, quite understandably, would require instructions as specific as mathematical formulas. But such specificity often is impossible. The phrases 'member of' and 'affiliated with,' especially when applied to the relationship

in determining what portions of the instruction applied to the different scenarios presented at trial. Nonetheless, because defendant admitted he shot the victim while engaged in the unlawful activity of an attempted narcotics purchase, the court of appeal erred in finding the instruction was erroneous on the basis that La.R.S. 14:20(D) prohibits jurors from considering the possibility of retreat in evaluating the reasonableness of defendant's violent response.

As noted above, harmless-error analysis applies to instructional errors so long as the error at issue does not categorically vitiate all the jury's findings. For example, in Neder v. United States, 527 U.S. 1, 8-10, 119 S.Ct. 1837, 1833-34, 144 L.Ed.2d 35 (1999), the Supreme Court determined that "an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence", and therefore such error is subject to harmless-error analysis. Earlier, that court had determined that when a jury was incorrectly instructed to presume malice in violation of the rule of Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) the error is subject to harmless-error analysis. Rose v. Clark, 478 U.S. 570, 581-83, 106 S.Ct. 3101, 3107–09, 92 L.Ed.2d 460 (1986). Citing Rose v. Clark, the Supreme Court in Pope v. Illinois, 481 U.S. 497, 503-04, 107

---

between persons and organizations that conceal their connection, cannot be defined in absolute terms. The most that is possible, and hence all that can be expected, is that the trial court shall give the jury a fair statement of the issues— *i.e.*, whether petitioner was a member of or affiliated with the Communist Party on the date of his affidavit—give a reasonable definition of the terms and outline the various criteria, shown in the evidence, which the jury may consider in determining the ultimate issues. We believe that the instructions in this case, which are consistent with all the judicial precedents under § 9(h), adequately met those tests.

Killian, 368 U.S. at 257-58, 82 S.Ct. at 317.

S.Ct. 1918, 1922-23, 95 L.Ed.2d 439 (1987), found that the error in instructing a jury to use a state community standard in considering whether magazines were utterly without redeeming social value (and therefore obscene) was subject to harmless-error analysis. If harmless-error analysis applies in those instances, then *a fortiori* it applies here.

Under the harmless-error test of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the question is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Chapman, 386 U.S. at 24, 87 S.Ct. at 828; see also State v. Gibson, 391 So.2d 421, 426-27 (La. 1980). In Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the Supreme Court clarified that the inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." Id., 508 U.S. at 279, 113 S.Ct. at 2081; see also State v. Code, 627 So.2d 1373, 1384 (La. 1993).

In the present case, although the jury instruction had room for improvement and there was some potential for confusion, the confusion was to defendant's benefit. Notably, he, as a person who admitted he was engaged in an attempted narcotics transaction, received the benefit of an instruction informing the jury they could not consider the possibility of retreat as a factor in determining whether he had a reasonable belief that deadly force was reasonable and apparently necessary, in accordance with La.R.S. 14:20(D), although he was not entitled to that instruction by operation of La.R.S. 14:20(C) because he was engaged in unlawful activity. Cf. United States v. Pinson, 542 F.3d 822, 832-33 (10th Cir. 2008) ("Even if

14

the instruction were erroneous, however, Mr. Pinson's claim still must fail. Even if the instructions did delve into his subjective intent to carry out the threat, this was an added burden placed on the government. It required the government to prove an additional element, namely, Mr. Pinson's actual intention when he made the threats. An incorrect instruction that is beneficial to the defendant is generally not considered prejudicial.") (citing Killian v. United States, 368 U.S. 231, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961)); United States v. White, 972 F.2d 590, 596 (5th Cir. 1992) ("The fact that the district court gave the lesser included instruction on Count 1 does not change our opinion. The defendants were not entitled to that instruction. The defendants therefore got a more generous instruction than they were entitled to on the first Count of the indictment. That did not require the trial court to grant them an overly generous instruction on Count 2. Admittedly, the inconsistency in instructing on the lesser included verdict on Count One and declining that instruction on Count 2 created some confusion. But if that confusion had any effect on the verdict it was beneficial to the defendants."); Coleman v. United States, 367 F.2d 388, 388 (9th Cir. 1966) ("Similarly, his cautionary instruction concerning testimony of an accomplice was proper, for the jury might have considered the government's witness Hunter, who wrote the holdup note, a participant in the crime. But even if abstract, the instruction was beneficial rather than harmful to defendants."). Thus, we agree with the dissent's determination that the verdict of guilty of manslaughter was surely not attributable to the disputed portion of the jury instruction and the jury charge as a whole was not prejudicial to defendant. See Wells, 11-0744, pp. 10-11, 156 So.3d at 175-76 (Landrieu, J., dissenting).

Accordingly, the ruling of the court of appeal is reversed and the matter is remanded for consideration of defendant's remaining assignments of error.

**REVERSED AND REMANDED**