STATE OF LOUISIANA       *       NO. 2023-KA-0766

VERSUS       *

      **COURT OF APPEAL**

JAMOL RICKMON       *

      **FOURTH CIRCUIT**

      *

      **STATE OF LOUISIANA**

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 543-684, SECTION "B"
Honorable Tracey Flemings-Davillier
* * * * * *
**Judge Nakisha Ervin-Knott**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Nakisha Ervin-Knott, Judge Monique G. Morial)

Jason Roger Williams
District Attorney
Brad Scott
Chief of Appeals
Patricia Amos
Assistant District Attorney
ORLEANS PARISH
619 South White Street
New Orleans, Louisiana 70119

      COUNSEL FOR STATE OF LOUISIANA/APPELLEE


Holli Herrle-Castillo
LOUISIANA APPELLATE PROJECT
P. O. Box 2333
Marrero, LA 70073-2333


      COUNSEL FOR DEFENDANT/APPELLANT


                  **AFFIRMED**
               **February 18, 2025**

NEK

DLD

MGM

Defendant, Jamol Rickmon ("Defendant"), appeals his convictions for three counts of aggravated rape in violation of La. R.S. 14:42. For the following reasons, we affirm Defendant's convictions.

## PROCEDURAL HISTORY

On November 29, 2018, the State charged the Defendant with three counts of aggravated rape in violation of La. R.S. 14:42[1] for crimes committed in the late 1990s. Specifically, the Defendant was charged as follows—Count 1, aggravated rape against P.J. on July 20, 1996; Count 2, aggravated rape against C.F. on July 29, 1996; and Count 3, aggravated rape against M.K. on January 31, 1997.[2] The State charged Defendant with these crimes after the Defendant's DNA had been submitted to the Combined DNA Index System ("CODIS"), which linked him to the DNA samples collected in the victims' cases. Defendant pled not guilty to the crimes, and a four-day jury trial commenced on March 20, 2023. At the conclusion of the trial, the jury unanimously found the Defendant guilty on all three counts.

---

[1] La. R.S. 14:42 has been amended several times since the commission of the Defendant's crimes, and the statute currently charges the crime as first degree rape.
[2] In accordance with La. R.S. 46:1844(W)(1)(a), we will refer to Defendant's victims by their initials to protect their identity.

1

On April 20, 2023, the trial court sentenced the Defendant to life imprisonment. This appeal followed.

**ERRORS PATENT**

Prior to reviewing the merits of this appeal, we are tasked with examining the record for any errors patent in accordance with La. C.Cr.P. art. 920.[3] Our review of the record does not reveal any errors patent.

**ASSIGNMENTS OF ERROR**

On appeal, Defendant raises three assignments of error. First, the Defendant asserts that the trial court erred in allowing the State to introduce other crimes evidence under La. C.E. arts. 404(B) and 412.2. Next, Defendant contends that his counsel was ineffective for failing to request a limiting jury instruction regarding the use of the other crimes evidence. Finally, Defendant argues that the totality of the evidence submitted was insufficient to support his conviction. We address each assigned error in turn.

**DISCUSSION**

***Assignment of Error No. 3: Whether the evidence was sufficient to support Defendant's conviction***

As a general rule, when a defendant raises issues regarding the sufficiency of evidence in conjunction with other trial court errors, the appellate court should determine the sufficiency of the evidence first. *State v. Hearold*, 603 So. 2d 731, 734 (La. 1992). Here, Defendant argues that the evidence presented at trial was insufficient to support his three convictions for aggravated rape under La. R.S. 14:42. Specifically, Defendant argues that the only evidence linking him to the crimes is "questionable" DNA evidence that exhibited anomalies the experts at

---

[3] An error patent is an error "that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence" La. C.Cr.P. art. 920(2).

trial were unable to explain, thus rendering the DNA evidence insufficient to connect him to the crimes.

When reviewing a challenge to the evidence supporting a conviction, appellate courts are required to review the trial record as a whole and determine whether, after looking at all the evidence in a light favorable to the prosecution, "a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Green*, 588 So. 2d 757, 758 (La. App. 4th Cir. 1991) (citations omitted). In doing so, the appellate court must consider both the admissible and inadmissible evidence in the record in reaching its determination. *See Hearold*, 603 So. 2d at 734. If rational minds could disagree as to the interpretation of the evidence, then the view most favorable to the prosecution must be adopted. *Green*, 588 So. 2d at 758 (citing *State v. Mussall*, 523 So. 2d 1305 (La. 1988)). A reviewing court should not disturb the factfinder's determination unless that determination is clearly contrary to the evidence presented. *State v. Quezada*, 2013-1318, p. 4 (La. App. 4 Cir. 5/21/14), 141 So. 3d 906, 911 (quoting *State v. Wells*, 2010-1338, pp. 4-5 (La. App. 4 Cir. 3/30/11), 64 So. 3d 303, 306) (other citations omitted).

In reaching our decision, we must determine (1) whether the evidence was sufficient to prove that the charged crimes occurred and (2) whether the evidence was sufficient to identify the Defendant as the perpetrator of the charged crimes.

### i. Whether the evidence was sufficient to prove that the charged crimes occurred

In this case, Defendant was charged with three counts of aggravated rape in violation of La. R.S. 14:42. At the time the rapes were committed in the 1990s, La. R.S. 14:42(A) held, in pertinent part:

3

> Aggravated rape is a rape committed . . . [when] the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> (1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
>
> (2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
>
> (3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.

Thus, the State had to prove that the victims did not consent to the intercourse because the Defendant (1) used force to prevent them from resisting, (2) used threats of great and immediate bodily harm to prevent them from resisting, or (3) used a dangerous weapon to prevent them from resisting.

P.J. testified at trial that she was awoken in the middle of the night by a stranger in her bedroom. At the time, she had her two young nieces and baby step-son sleeping in the bed with her. The perpetrator put a gun to P.J.'s head and threatened to harm the children if she made any sudden movements. The perpetrator made P.J. leave the room, forced her to get on the ground, and made her perform oral sex on him. Thereafter, the perpetrator performed oral sex on P.J. and penetrated her vaginally. P.J. testified that the perpetrator had the gun lying on the floor with his hand on it throughout the encounter. Before leaving, the perpetrator threatened to harm P.J.'s family if she called the police. After the perpetrator had left, P.J. called her brother, who reported the crime to the police. P.J. went to the hospital that same night to have a sexual assault examination performed.

4

M.K. similarly testified that she was awoken in the middle of the night by a stranger in her bedroom. The perpetrator pressed a cold object to her neck, which she believed to be a knife; ordered her to get face down on the bed; and penetrated her vaginally. At the time of the encounter, M.K.'s family, which included young children, was residing downstairs, so she waited until the perpetrator had left the house before screaming for help. M.K. went to the hospital that night to have a sexual assault examination performed. Years later, she was contacted by Det. Dennis Dejean, who informed her that the police had found a DNA match from the samples collected from that night. She confirmed to Det. Dejean that she did not consent to the sex the night of the crime.

Unfortunately, C.F. passed away prior to this trial and was unable to give her account. However, her neighbor and the investigating officer testified as to C.F.'s condition on the day of the rape. Quindaline Fern Hernandez, C.F.'s neighbor, testified that she heard a pounding on her front door during the early morning hours. She opened the door to a crying C.F., who was only wearing a blouse and underwear. C.F. stated that she had been raped at gunpoint behind her house. Ms. Hernandez testified she gave C.F. a towel to cover herself and called the police. Det. Dejean testified that he was assigned to investigate C.F.'s case. When he arrived on the scene the day of the incident, he found C.F. partially disrobed and wearing a towel. He spoke with C.F., her sister, and the neighbors, and he did not find any contradictions in their stories. C.F. indicated to him that her vagina was sore and that she had back pain from where the perpetrator had kicked her. C.F. went to the hospital to have a sexual assault exam performed, and Det. Dejean collected the assault kit from the hospital to be placed in storage. Finally, Heidi Martin, the coordinator of forensic services at University Medical Center and a

certified Sexual Assault Nurse Examiner, read to the jury C.F.'s medical report taken from the day C.F. had her sexual assault examination performed. The report recounted that C.F. indicated she was forced into an alley behind her house at gun point. Therein, she was struck in the face and the back and sexually assaulted. The report noted injuries such as facial and back contusions, and the report ultimately diagnosed C.F. as being sexually assaulted.

As described above, the jury was presented with ample evidence that the aggravated rapes occurred. The evidence showed that each of the three victims were threatened, and in one instance outright attacked, by a perpetrator armed with a dangerous weapon. The evidence further revealed that all of the victims were taken by surprise by the perpetrator, that none of them knew who he was prior to the assault, and that none of them consented to having sex with him. In light of the above, we find the evidence produced at trial to be sufficient for a rational juror to find that an aggravated rape occurred.

### ii. Whether the evidence was sufficient to identify Defendant as the perpetrator of the crimes

Defendant's main argument on appeal is that the DNA evidence used to identify him as the perpetrator of these crimes is insufficient. When a defendant's identity as the perpetrator in a crime is a key issue in a case, the State is required to disprove any *reasonable* probability of misidentification. *State v. Neal*, 2000-0674, p. 11 (La. 6/29/01), 796 So. 2d 649, 658 (citations omitted) (emphasis added). At trial, the jury heard from numerous witnesses, including the investigating law enforcement agents, that, after each crime, the victims had sexual assault examinations performed on them, which included taking DNA samples from the

6

victims and their personal effects. These DNA samples were stored with the NOPD.

The jury also heard from two experts in DNA analysis—Ann Montgomery and Julia Naylor—who reviewed the reports linking the DNA samples to Defendant. Montgomery testified that she helped bring New Orleans into the CODIS system, a standardized database that analyzes DNA evidence submitted by federal and state agencies nationwide. She provided a detailed explanation of how DNA analysis works, including the significance of possible anomalies in a finding and how such an anomaly would affect the result. Montgomery testified that she agreed with the findings in the reports she reviewed, all of which found that the possibility of the DNA structure in the kits belonging to someone other than the Defendant to be at least one in over a quadrillion. When she was questioned regarding the anomalies in the report, Montgomery explained that DNA analysts are conservative in their tests and will report any possible anomalies. However, she confirmed that, after reviewing the DNA reports, the anomalies did not change her opinion on the final result. She also confirmed that, while DNA evidence can degrade over time, any degradation would not produce a wrong result. Rather, the degradation would produce no result at all.

Naylor, who works in the Forensic Data Unit at the Louisiana State Police Crime Laboratory, also reviewed all the DNA reports linking Defendant to the crimes, and she confirmed that she too agreed with the findings. She likewise explained the anomalies found in the DNA reports and testified that the presence of these anomalies did not change the overall interpretation of the DNA evidence.

It is well-settled in the jurisprudence that the testimony of a single witness is enough to support a conviction and that the trier of fact's credibility determination

regarding a witness' testimony should not be disturbed unless such testimony is clearly contrary to the evidence. *Wells*, 2010-1388, p. 5, 64 So. 3d at 306. Although Defendant attacks the sufficiency of the DNA evidence linking him to the charged crimes, the jury heard ample testimony from experts in forensics explaining how the DNA evidence was evaluated and analyzed in order to reach the conclusion that Defendant committed the crimes. The jury had the discretion to accept this testimony, and we do not find its decision to do so clearly wrong or contrary to the evidence presented. As such, we find the evidence presented at trial sufficient to link Defendant to the crimes charged.

### *Assignment of Error No. 1: Whether the trial court erred in allowing other crimes evidence under La. C.Cr.P. arts. 404(B) and 412.2*

Finding the evidence submitted to be sufficient to convict the Defendant of the charged crimes, we must now determine whether the trial court erred in allowing evidence of Defendant's other crimes to be submitted to the jury. Prior to trial, the State filed two notices of intent to introduce evidence of other crimes pursuant to Louisiana Code of Evidence articles 404(B) and 412.2, and, over Defendant's objection, the trial court granted the State's request to use that evidence at trial.

At trial, the jury heard from four witnesses who corroborated three other crimes committed by the Defendant.[4] First, the jury heard from S.W.[5] who testified that, on August 5, 1997, she awoke to a strange man standing over her. The perpetrator held a gun in his hand, struck S.W. over her head, and told her to undress. Fortunately, S.W. was able to escape before the crime escalated any

---

[4] While other crimes were listed in the State's notices of intent, only these three incidents were presented to the jury at trial.

[5] Evidence from S.W.'s case was admitted under La. C.E. art. 412.2. In accordance with La. R.S. 46:1844(W)(1)(a), we will refer to S.A. by her initials to protect her identity.

further. S.W. reported the crime to the police and identified Defendant as the perpetrator in a photo line-up.

Next, the jury heard from Cassandra Brown[6] who testified that, on May 10, 1997, she awoke in the middle of the night to a stranger looking through her bedroom doorway. The stranger left but subsequently returned with a knife. He demanded money but departed without incident after Brown told him she did not have any money. Brown reported the crime to the police, and Defendant ultimately pled guilty to committing the crime.

Finally, the jury heard from L.A. and her husband, R.A.[7] Collectively, the couple testified that, on August 1, 1997, they awoke in the middle of the night to a strange man in their bedroom. Specifically, L.A. testified that she awoke because she felt somebody rubbing her leg. L.A. woke up her husband, but, by the time R.A. went to reach for a weapon, the stranger had fled. The couple reported that the perpetrator had stolen a number of items from them.

Appellate courts review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *State v. Wright*, 2011-0141, pp. 10-11 (La. 12/6/11), 79 So. 3d 309, 316 (citation omitted). Generally, evidence of other crimes or bad actions is not admissible. *State v. Robertson*, 2015-2095, p. 2 (La. 2/5/16), 183 So. 3d 1287, 1289 (citation omitted). However, such evidence may be admissible when the purpose of the evidence has relevance outside of showing a defendant's bad character or propensity to criminal activity and when the evidence tends to prove a material fact at issue. *Id.* at p. 2, 183 So. 3d at 1289-90 (other citations omitted).

---

[6] Evidence from Cassandra Brown's case was admitted under La. C.E. art. 404(B).
[7] Evidence from the L.A. and R.A.'s case was admitted under both La. C.E. arts. 404(B) and 412.2. Thus, in accordance with La. R.S. 46:1844(W)(1)(a), we will refer to L.A. and R.A. by their initials to protect their identity.

Evidence of other crimes or wrongs committed by a defendant may be admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident." La. C.E. art. 404(B)(1)(a). Additionally, when a defendant has been charged with a crime involving sexually assaultive behavior, evidence of that defendant's other crimes or actions involving sexually assaultive behavior may be admissible. La. C.E. art. 412.2(A). Article 412.2 acts as an exception to Article 404(B) in that it allows the evidence of other crimes or sexually assaultive behavior to be considered for the purpose of showing a defendant's propensity to commit such actions. *See State v. Layton*, 2014-1910, p. 3 (La. 3/17/15), 168 So. 3d 358, 359. The term "sexually assaultive behavior" used in Art. 412.2 is a general expression meant to reference a broad range of behavior. *Id*. at p. 7, 168 So. 3d at 362.

In reviewing La. C.E. art. 404(B), we find that the trial court did not err in allowing evidence from the Cassandra Brown and L.A./R.A. cases to be admitted. Both cases are similar to the crimes of the charged offenses in that the Defendant entered into a dwelling without authorization and awoke his victims, who mostly consisted of women, during the late night and early morning hours. The State argued in its notice of intent that the purpose of introducing these two incidents was to establish the Defendant's *modus operandi*. Given the above, we agree that these incidents establish a similar *modus operandi*, and we do not find that the trial court abused its discretion in admitting this evidence.

Turning to La. C.E. art. 412.2, we also find that the trial court did not err in admitting evidence from the S.W. and L.A. cases. As previously noted, evidence under this article may be introduced for the purpose of showing a defendant's propensity for committing sexually assaultive behaviors. S.W.'s testimony

establishes that Defendant attacked her and told her to undress, implying that some form of a sexual action would follow. L.A. testified that she awoke in the middle of the night to the Defendant rubbing her leg, which can be an implicitly sexual action. Clearly, because she was asleep, L.A. did not consent to the Defendant touching her. We find the above evidence falls within the ambit of La. C.E. art. 412.2, and the trial court did not abuse its discretion in allowing the evidence to be presented at trial.

Even assuming, only for the sake of argument, the above evidence should not have been admitted, such an erroneous admission would be subject to a harmless error review. *See State v. Johnson*, 1994-1379, p. 17 (La. 11/27/95), 664 So. 2d 94, 102. Under a harmless error analysis, the appellate court must determine whether it appears beyond a reasonable doubt that "the guilty verdict actually rendered . . . was surely unattributable to the error." *State v. Wells*, 2014-1701, p. 14 (La. 12/8/15), 209 So. 3d 709, 717-18 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993)) (other citation omitted). As already discussed in our analysis of assignment of error no. 3, we find the evidence submitted as to each victim's case, including the DNA reports linking the Defendant to each crime, sufficient alone for a reasonable juror to find Defendant guilty beyond a reasonable doubt. Therefore, any speculative error committed by the trial court in admitting the other crimes evidence is harmless.

### Assignment of Error No. 2: Whether defense counsel was ineffective

Finally, in assignment of error no. 2, Defendant argues his defense counsel was ineffective. Specifically, Defendant asserts that his defense counsel should have requested a limiting jury instruction in regards to the other crimes evidence submitted under La. C.E. arts. 404(B) and 412.2.

Typically, ineffective assistance of counsel claims should be raised through an application for post-conviction relief so that a full evidentiary hearing may be conducted, if warranted. *State v. Williams*, 2017-0544, p. 23 (La. App. 4 Cir. 3/14/18), 240 So. 3d 355, 368 (quoting *Quezada*, 2013-1318, pp. 10-11, 141 So. 3d at 914-15). However, if the record contains sufficient evidence on appeal, the appellate court may address the claim. *Id*. In order to succeed on an ineffective assistance of counsel claim, a defendant must prove (1) his trial counsel's performance was deficient and (2) that deficiency prejudiced him. *State v. Dominick*, 2013-0121, p. 11 (La. App. 4 Cir. 11/20/13), 129 So. 3d 782, 790 (citations omitted). To do so, the defendant must prove that, but for his counsel's deficient performance, there is a reasonable probability that the outcome of the trial would have been different. *Williams*, 2017-0544, p. 23, 240 So. 3d at 368 (citation omitted).

We do not find that counsel's performance, deficient or otherwise, prejudiced Defendant. Defendant's ineffective assistance of counsel claim is restricted to whether his counsel should have requested a limiting jury instruction regarding the other crimes evidence. However, given that we find the totality of the evidence sufficient to support his convictions, and the inclusion of other crimes evidence to be proper or, at most, harmless error, we cannot find that a jury instruction would have reasonably altered the outcome of the trial.

**DECREE**

For the foregoing reasons, we affirm Defendant's convictions.

**AFFIRMED**

12