Judgment rendered April 9, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,232-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

DANA JAMARIYAA COMBS                    Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 382,570

Honorable Michael A. Pitman, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Sherry Watters

JAMES E. STEWART, SR.                   Counsel for Appellee
District Attorney

CHRISTOPHER BOWMAN
Assistant District Attorney

* * * * *

Before ROBINSON, MARCOTTE, and ELLENDER, JJ.

**ELLENDER, J.**

Dana Combs appeals his conviction, after jury trial, of second degree murder and his mandatory sentence of life without benefits. For the reasons expressed, we affirm.

**FACTUAL BACKGROUND**

The shooting took place on Theo Street, in the Mooretown/Hollywood Heights area of Shreveport. The victim, 39-year-old Colvin Germany, a chef at a local casino, lived there with his fiancée of three years, Samantha Phill, along with Samantha's sister Ella and Ella's boyfriend, Korey Gay.

On April 24, 2021, Colvin and Samantha were out drinking, smoking marijuana, and visiting relatives when Samantha looked at Colvin's phone and saw he had been receiving text messages from a woman he met on Tinder, an online dating site. This discovery led to an argument and, when they got back to the house on Theo Street, Samantha ordered Colvin to leave. While he started packing his things, Samantha walked to a nearby store. When she got back, Colvin was not there but some of his belongings, in "totes," were still piled in the front yard. Samantha also discovered her $3,400 tax return money was missing.

Samantha enlisted Korey to go look for Colvin. Ultimately, they went to a house on Clarke Blvd., about one mile away, where the 23-year-old defendant, Combs, lived with his mother and other relatives. (Samantha and Combs were cousins but had been raised together like brother and sister.) Several people were there on Clarke Blvd., including Combs, his brother Cortez, and another person, Corey ("JoJo") Holden. While Samantha waited in the car, Korey told these three about the situation between Samantha and Colvin. Combs walked out to the car to check on Samantha. She told him

nothing physical had happened with Colvin and asked Combs not to get involved, but Combs testified her lip was "busted," she looked disheveled, and she told him Colvin had "jumped on her" and taken her money. Korey then drove her back to Theo Street; after this, he left to pick up Ella for work and was not present for the later events.

The group on Clarke Blvd., apparently concerned for Samantha's safety, got into Cortez's black Grand Marquis and drove over to Theo Street, parking in the driveway of an abandoned house across the street. One or more of them went to Samantha, who was sitting on the front porch, and told her they would get her money back if she wouldn't talk to Colvin anymore. She asked them to leave, but they stayed, milling around the Grand Marquis across the street.

Colvin then drove up, parked in Samantha's driveway, and began placing the totes in his red Chevy Cruze. Samantha stayed put on the porch and Colvin said nothing to anybody. He finished loading his things, got in the Cruze, and backed up to leave.

Before Colvin could leave, Combs walked up to the driver's door of the Cruze, drew a handgun, and blasted four shots through the window, killing Colvin. According to Samantha, Combs ran up to the window, yelled and screamed at Colvin to give back Samantha's money, and fired through the closed window. Combs then gave Samantha a look she described as so "cold and hateful" that she did not leave the porch to render aid to Colvin. Combs then opened the door of the Cruze, pulled Colvin's body out, tossed it on the road, and jumped in the Cruze and drove away. When police arrived at the scene, Colvin's body was still in the middle of the street; they

2

initially suspected it was a hit-and-run but then discovered the bullet wounds.

In a recorded interview shortly after the incident, Cortez told officers that Combs was the shooter and had reached inside the window of the Cruze to fire the gun. At trial, however, he gave a different account: while he was across the street, in the Grand Marquis, he saw *Colvin* with a gun in his back pants pocket, and when Combs went up to the window of the Cruze, Colvin's arms "went up." Cortez thought *Colvin* had shot *Combs*. Confronted with this inconsistency, Cortez claimed he was drunk when he gave the recorded statement and insisted he never told officers that Combs fired the fatal shots.

Combs took the stand in his own defense, admitting that Samantha told him she could handle the situation with Colvin, but after that, somebody sent a "guy in a Cadillac" to tell them (the people on Clarke Blvd.) they needed to come to Theo Street. Suspecting another altercation, he, Cortez, and JoJo drove there and parked across the street. They saw Colvin arrive and load his totes into the Cruze. Like his brother, Combs stated that Colvin was packing a pistol in his back pocket. When Colvin was about to leave, Combs went up to the car and told him, through a partly opened window, to give back Samantha's money; Colvin replied, "Hang on," reached around, and grabbed a gun and pointed it at Combs. Seeing this, Combs pulled his own gun and blasted it through the window. He did not think he actually struck Colvin, but admitted he turned and ran down Theo Street anyway. He denied pulling Colvin's body onto the street or moving his car. He testified he then left the weapon at his mother's house and did not know what happened to it later. Combs also admitted that in jail, after his arrest, he

3

texted Cortez, JoJo, and everyone else involved in the case, urging them not to testify. He admitted hoping that nobody would show up to testify against him.

Dr. James Traylor, a forensic pathologist at Ochsner-LSU, performed the autopsy on Colvin. He identified four gunshot wounds, including a lethal one under the left ear. However, two wounds to Colvin's hands were consistent with the hands being on the steering wheel when they were struck.

Corporal Debello, of the Shreveport Police Department, testified officers found Colvin's body on the pavement of Theo Street; they later found his Cruze a few blocks away, by Impact Church on Broadway Ave. The driver's window was shot out. Officers searched intensely but could not find any spent shells around the scene of the shooting. Detective Blanchard, also of SPD, testified that no gun was recovered, either in the Cruze, in the Grand Marquis, or in the house on Clarke Blvd., where Combs said he put it. Det. Blanchard also identified photos of Colvin's Cruze in the impound lot. The remnants of the driver's door glass showed the pane was in the "up" position when it was shattered by gunfire.

## PROCEDURAL HISTORY

The state indicted Combs for the second degree murder of Colvin. The state filed numerous responses to the defense's motions for discovery, but there were no pretrial hearings.

Trial began on March 4, 2024, with jury selection taking two days. Evidence began on the third day, with Cpl. Debello and Samantha testifying to the facts outlined above. During a recess, the state offered Combs a plea bargain: plead guilty to manslaughter for a 40-year sentence. Combs rejected this. Over the remaining two days, evidence continued with

4

testimony from Cortez (the state spent much time impeaching him with his earlier, recorded statement); Det. Blanchard (who provided a full overview of the case); Dr. Traylor; Kari Dicken (DNA analyst who performed tests that were largely inconclusive); Sgt. Mastrodomenico (communications recordkeeper at Caddo Detention Center); and Tydarrian Porter (a fellow inmate who assisted Combs in placing calls and texts to people involved in this case).

After the state rested, the court carefully advised Combs of the peril of testifying in his own defense; Combs insisted he wanted to do so. He took the stand and testified as described above.

The state called Det. Blanchard for a brief rebuttal.

In closing arguments, defense counsel asked for a verdict of manslaughter. The jury deliberated one hour, unanimously finding Combs guilty as charged of second degree murder. Counsel moved for post verdict judgment of acquittal, which the district court denied.

Two weeks later, the court held a sentencing hearing. It performed an Art. 894.1 analysis before imposing the mandatory life at hard labor without benefits. Counsel moved for reconsideration, which the court denied.

Combs now appeals, raising two assignments of error.

## DISCUSSION

### *Sufficiency of the Evidence*

By his first assignment of error, Combs urges the state failed to prove he was guilty of second degree murder beyond a reasonable doubt, specifically, by failing to prove the shooting was not in self-defense or defense of his cousin, Samantha. He concedes that neither the commission of the offense nor the identity of the offender was at issue. However, citing

5

his own and his brother Cortez's testimony, he argues the victim, Colvin, had a gun in his car. Whether Colvin raised the gun was a question for the jury to decide; however, the evidence that he did so, Combs argues, was sufficient to support his own reasonable belief that he was in imminent danger of death or great injury, or that the force he used was necessary to save him or Samantha from further harm. He concludes that on this evidence, the state did not prove beyond a reasonable doubt that the shooting was not committed in self-defense.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Stockstill*, 19-01235 (La. 10/1/20), 341 So. 3d 502. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. *State v. Bourgeois*, 20-00883 (La. 5/13/21), 320 So. 3d 1047; *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/6/09), 21 So. 3d 297.

The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness, in whole or in part. *State v. Brown*, 18-01999 (La. 9/30/21), 330 So. 3d 199; *State v. Morehead*, 55,825 (La. App. 2 Cir. 10/23/24), 400 So. 3d 302, *writ denied*, 24-01434 (La. 2/19/25), 400 So. 3d 932. The appellate court does not assess credibility or reweigh evidence. *State v. Kelly*, 15-0484 (La. 6/29/16), 195 So. 3d 449; *State v. Morehead*, *supra*. A reviewing court accords great

6

deference to the trier of fact's decision to accept or reject the testimony of a witness in whole or in part. *State v. Robinson*, 02-1869 (La. 4/14/04), 874 So. 2d 66; *State v. Morehead*, *supra*.

Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Combs does not dispute that he shot and killed Colvin. Instead, he claims he acted in self-defense.

A homicide is justifiable when it is committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. La. R.S. 14:20(A)(1). When self-defense is raised as an issue by the defendant, the state has the burden to prove beyond a reasonable doubt that the defendant did not act in self-defense. La. C. Cr. P. art. 390(A); *State v. Stockstill*, *supra*; *State v. Morehead*, *supra*. The critical issue is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense. *Id.*, citing *State v. Matthews*, 464 So. 2d 298 (La. 1985).

In determining whether a defendant had a reasonable belief that the killing was necessary, courts consider: (1) the possibility of avoiding the need to take a human life, by retreat; (2) the excitement and confusion of the situation; (3) the possibility of avoiding the need to take a human life, by using less force than killing; and (4) the defendant's knowledge of his assailant's dangerous character. *State v. Wells*, 14-1701 (La. 12/8/15), 209 So. 3d 709; *State v. Crow*, 52,817 (La. App. 2 Cir. 6/26/19), 278 So. 3d 416.

7

Combs raises several factual points that satisfy some of the elements of a claim of self-defense. He cites his own testimony that Samantha's lip was "busted" and that, after she and Korey sent a guy in a Cadillac to tell them it was important to come to Theo Street, he assumed another altercation was happening. He cites his own testimony (corroborated by that of his brother Cortez) that watching from across the street they saw Colvin had a gun in his back pocket. He cites the same witnesses' testimony that Colvin reached for the gun, an observation that Samantha did not deny because she could not see from her vantage point on the porch. These facts present some evidence that Combs believed Colvin was dangerous, armed, and might resort to using a weapon against him.

There was, however, compelling evidence contradicting Combs's account. Samantha denied that Colvin struck or abused her that day, but maintained they only argued about his online flirting with another woman; Det. Blanchard, who interviewed her, did not mention that she had a "busted" lip. She never stated, either in her interview with Det. Blanchard or on the witness stand, that she sent anyone to Clarke Blvd. to enlist Combs and the others to help her with Colvin; she thought Korey might have done this. In fact, she testified she told Combs, regarding the missing tax refund, that she could "take care of it." Although she agreed she could not see exactly what Colvin did when he backed the car into the street, she testified Colvin was *not armed* that day. Det. Blanchard confirmed that no gun was ever found, either on Colvin's person or in his car. In light of this evidence, a rational juror could have disregarded Combs's account of the incident.

Moreover, Combs had serious credibility issues, such as denying he got in Colvin's car and moved it, contrary to all the other evidence. The

8

state presented uncontradicted evidence, through cellmate Tydarrian Porter and Sgt. Mastrodomenico, that from jail Combs badgered Cortez and other witnesses to disobey their subpoenas and not testify at trial. Cortez changed his version of events, from a statement to Det. Blanchard that largely corroborated Samantha's, to trial testimony that largely followed Combs's. The jury could have reasonably inferred that these witnesses were simply not truthful.

After viewing the entire record in the light most favorable to the state, we conclude that a rational juror could have found, beyond a reasonable doubt, that the homicide was not committed in self-defense or the defense of others. This assignment of error lacks merit.

### *Excessive Sentence*

By his second assignment of error, Combs urges the court imposed an unconstitutionally excessive sentence of life imprisonment without parole. He concedes the court performed a thorough recitation of the Art. 894.1 factors and imposed the mandatory sentence, but argues the mandatory sentence prevents the individualization of the sentence to the circumstances of the offense and the offender, a core concept of sentencing, as recognized in *State v. Sepulvado*, 367 So. 2d 762 (La. 1979), and *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7. He contends that his conduct had some justification, though not fully self-defense, and this should serve as mitigation from the mandatory life sentence. He urges this court to vacate the sentence and remand for a hearing at which he could show his right to a downward deviation from life. In support, he cites *State v. Lawrence*, 09-1637 (La. App. 4 Cir. 8/25/10), 47 So. 3d 1003, in which a remand was granted, and *State v. Paddio*, 02-722 (La. App. 3 Cir. 12/11/02), 832 So. 2d

9

1120, *writ denied*, 03-0402 (La. 2/13/04), 867 So. 2d 682, in which it was considered but ultimately rejected.

Review of sentences for excessiveness is usually a two-prong process, the first prong being a check of the trial court's compliance with the guidelines of La. C. Cr. P. art. 894.1. However, when there is a mandatory sentence, there is no need for the trial court to justify, under Art. 894.1, the sentence it is legally required to impose. *State v. Parker*, 54,947 (La. App. 2 Cir. 3/1/23), 358 So. 3d 220, *writ denied*, 23-00417 (La. 10/3/23), 370 So. 3d 1073, and citations therein. The mandatory sentence for second degree murder is life at hard labor without benefits. La. R.S. 14:30.1(B).

A defendant may attempt to rebut the presumption that a mandatory minimum sentence is constitutional, but he must show, clearly and convincingly, "because of unusual circumstances, he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." *State v. Johnson*, 97-1906 (La. 3/4/98), 709 So. 2d 672; *State v. Parker*, *supra*.

Combs correctly shows that the court performed a thorough analysis of the Art. 894.1 factors. While the court found several aggravating factors did not apply, it found many did. Most notably, after the offense, Combs used or caused others to use violence, force, or threats with the intent to influence the institution, conduct, or outcome of the criminal proceedings. The court found Combs was "talking to witnesses or associates to threaten eyewitnesses in this case to either not show for trial or to change their testimony, or to invoke their Fifth Amendment right to remain silent or say that they were too intoxicated to see or recall the offense." The court also

10

noted Combs's criminal record, including a 2015 guilty plea to simple robbery and a 2018 guilty verdict of possessing a firearm or carrying a concealed weapon by a convicted felon; despite his status as a felon, Combs was armed at the time of this offense, in April 2021. The court referred multiple times to the shocking brutality of firing four shots, at point-blank range, into the body of a person sitting in a car with his hands on the wheel. The district court's compliance with Art. 894.1 was thorough and exemplary.

The second prong is constitutional excessiveness. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the severity of the crime or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980). The courts have repeatedly rejected the claim that mandatory life for second degree murder is a violation of the prohibition against excessive punishment. *State v. Parker*, 416 So. 2d 545 (La. 1982); *State v. Cannon*, 55,847 (La. App. 2 Cir. 10/2/24), 400 So. 3d 1085, and citations therein. An excessive sentence is one "so grossly disproportionate to the severity of the crime as to shock our sense of justice" or that makes "no reasonable contribution to acceptable penal goals." *State v. Griffin*, 14-1214 (La. 10/14/15), 180 So. 3d 1262; *State v. Nabors*, 53,357 (La. App. 2 Cir. 4/22/20), 295 So. 3d 974, *writ denied*, 20-00709 (La. 10/6/20), 302 So. 3d 527.

Combs's motion to reconsider alleged merely that the sentence was excessive and out of proportion to the seriousness of the offense. Considering the gravity of the offense, which ended Colvin's life, the rash brutality of Combs's conduct, his criminal history, and his efforts to subvert

11

the legal process, we find no gross disproportionality, no shock to the sense of justice, and no deviation from acceptable penal goals.  This assignment of error lacks merit.

## CONCLUSION

For the reasons expressed, the conviction and sentence are affirmed.

**AFFIRMED**.